UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/23/2020
```

------------------------------------------------------------------X
                                         :

REKOR SYSTEMS, INC.,                  :

                                         :

                         Plaintiff,      :       19-cv-7767 (LJL)
             -v-                      :

                                         :      <u>OPINION & ORDER</u>

SUZANNE LOUGHLIN, et al.,        :

                                       :

                         Defendants.    :

                                       :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

       Before the Court are two motions.  Defendants Suzanne Loughlin ("Loughlin"), Harry

Rhulen ("Rhulen"), and James Satterfield ("Satterfield") (collectively, "Defendants") move,

pursuant to Fed. R. Civ. P. 12(c), for judgment on the pleadings dismissing "so much of [the

complaint against them] as asserts a claim for rescission."  Dkt. No. 70 at 1.

       Defendants also move for an advance of attorney's fees to which they claim they are

entitled pursuant to indemnification provisions in the Amended and Restated Bylaws of Plaintiff

Rekor Systems, Inc., Dkt. No. 54-25 ("Rekor Bylaws") and the operating agreement of

Counterclaim Defendant Firestorm Franchising, Inc., Dkt. No. 54-26 ("FF Operating

Agreement").

<b>BACKGROUND</b>

       This case arises out of the claim by Plaintiff Rekor Systems, Inc. ("Plaintiff" or "Rekor")

that it was the victim of an alleged fraud committed by Defendants in connection with the sale of

Defendants' membership interests in two businesses, Firestorm Solutions LLC ("FSLLC") and

Firestorm Franchising LLC ("FFLLC", and together with FSLLC, "Firestorm") to Rekor.

Plaintiff further alleges that Defendants committed trespass, conversion, breach of fiduciary

duty, and a violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. ("CFAA") by deleting Rekor emails upon resigning from their positions as officers at Rekor in 2018.  The allegations are hotly disputed.  The following facts, accepted as true for purposes of deciding the instant motion for judgment on the pleadings only, are taken from the Second Amended Complaintand exhibits thereto.  Dkt. No. 64 ("SAC").

Rekor is a publicly-traded Delaware corporation that provides technology products and professional services for clients in the areas of government contracting, aerospace, public safety, security, transportation, financial services, and logistics.  SAC ¶ 1.  Rekor was formed in February 2017 as the result of the merger of Keystone Solutions, Inc. ("Keystone"), which was Rekor's predecessor,[1] with Brekford Traffic Safety, Inc.  *Id*. ¶¶ 5, 15.

Firestorm was a business specializing in crisis-management and emergency-response consulting that was operating (or held out by Defendants as operating) on a franchise business model.  *Id*. ¶ 4.  Firestorm was owned by Defendants as follows: Loughlin, Rhulen, and Satterfield each owned 25% of FSLLC, and Lancer Financial Group, Inc. (not a party to this lawsuit) owned the remaining 25%.  *Id*. ¶ 42.  FFLLC, in turn, was owned 49% by FSLLC with Defendant Satterfield owning the remaining 51%.  *Id*.

Defendants Loughlin and Rhulen are siblings who grew up in the same neighborhoods as and were childhood friends with Rekor's CEO Robert Berman ("Berman").  *Id.* ¶ 23.  In the summer of 2016, before the formation of Rekor, Loughlin and Rhulen described Firestorm to Berman, and the three began to discuss the idea of Keystone purchasing Firestorm.  *Id.* ¶ 24.  Eventually, on January 25, 2017, Keystone and Firestorm entered into a Membership Interest

---

[1] Thus, references to the Plaintiff throughout this opinion are made to "Rekor" when identifying the corporate plaintiff as it existed after February 2017, and to "Keystone" when identifying the corporate plaintiff as it existed prior to February 2017.

Purchase Agreement. *See* Dkt. No. 64-1 (the "Purchase Agreement"). Under the Purchase Agreement, Defendants sold 100% of their interests in Firestorm to Keystone, in exchange for the following:

    a. Cash payments aggregating $500,000, with $250,000 payable to Defendant Satterfield; $125,000 payable to Defendant Loughlin; and $125,000 payable to Defendant Rhulen (the "Cash Payments").

    b. Promissory notes aggregating $500,000, with $166,666.67 payable to Defendant Satterfield; $166,666.67 payable to Defendant Loughlin; and $166,666.66 payable to Defendant Rhulen (the "Promissory Notes").

    c. Four hundred eighty-eight thousand and ninety-four (488,094) shares of [Keystone's] common stock, distributed as follows: 162,698 shares to Defendant Satterfield; 162,698 to Defendant Loughlin; and 162,698 to Defendant Rhulen (the "Common Stock").

    d. Three warrants to purchase an aggregate of one hundred sixty-two thousand six hundred and ninety-nine (162,699) shares of [Keystone] common stock at a purchase price of $5.00 per share, distributed as follows: Warrant to Defendant Satterfield for 54,233 shares; Warrant to Defendant Loughlin for 54,233 shares; and Warrant to Defendant Rhulen for 54,233 shares (the "Five-Dollar Warrants").

    e. Three warrants to purchase an aggregate of one hundred sixty-two thousand six hundred and ninety-nine (162,699) shares of [Keystone] common stock at a purchase price of $7.00 per share, distributed as follows: Warrant to Defendant Satterfield for 54,233 shares; Warrant to Defendant Loughlin for 54,233 shares; and Warrant to Defendant Rhulen for 54,233 shares (the "Seven-Dollar Warrants").

SAC ¶ 43.

In addition, Keystone purchased Lancer's 25% interest in FSLLC in exchange for a $500,000 promissory note. *Id*. ¶ 46. The warrants and promissory notes that formed part of the consideration for Defendants' sale of Firestorm were tied to the overall financial performance of Keystone subsequent to the Purchase Agreements, and not just to the performance of Firestorm. *Id*. ¶¶ 49-52. Accordingly, because Firestorm would constitute only a small portion of the combined business—which was intended to continue to grow and become a public company— Defendants allegedly had a motive to induce Keystone to purchase Firestorm for an inflated

price.  Their consideration did not depend on "Firestorm's individual achievements but was instead linked to [Keystone's] overall performance."  *Id.* ¶ 51.

On or about January 25, 2017, Defendants also entered into five-year executive employment agreements with Keystone.  Rhulen was hired to be President of Keystone, Loughlin was hired to be Chief Administrative Officer and General Counsel of Keystone, and Satterfield was hired to be President of Firestorm.  *Id.* ¶ 53.

Plaintiff alleges that in the months before the Purchase Agreement, Defendants made material misrepresentations and omissions which induced Keystone to enter into a transaction that it would not have entered if it had been properly informed.  The central set of misrepresentations and omissions concerns Firestorm's purported franchise business and prospects.  Plaintiff alleges that at various times in 2016, in calls and in-person meetings, Defendants informed Plaintiff that Firestorm had signed up a group of franchisees who had paid an initial franchise fee of approximately $50,000, and that the franchisees had minimum continuing monthly royalty payments.  *Id.* ¶¶ 58-59, 61.  Contrary to these claims, Plaintiff alleges, the majority of Firestorm franchises had their initial franchise fee waived, and many also had their monthly royalty waived, as memorialized in side letters ("Side Letters"), which were not produced to Plaintiff and of which Plaintiff was never informed before execution of the Purchase Agreement, despite Keystone requesting, *inter alia*, copies of all material contracts of Firestorm, including all franchise agreements.  *Id.* ¶¶ 63, 65, 69.  Plaintiff claims that Defendants knew or recklessly disregarded that their representations about these fees were false, and that they deliberately or recklessly failed to produce the Side Letters.  In particular, on or about December 21, 2016, Defendants provided ten franchise agreements to Keystone, which Defendants represented were complete, but which did not include any of the Side Letters.  *Id.*

¶¶ 79-81.  Rekor alleges that the omission of the Side Letters misled it about the financial viability of Firestorm, and that Keystone would not have entered the Purchase Agreement had it known that Defendants were establishing franchises without any requirement or expectation of receiving revenue from those franchises.  *Id.* ¶¶ 84-85.

Plaintiff also alleges that in the months before execution of the Purchase Agreement, Defendants—and, "particularly Defendant Rhulen"—repeatedly represented to Keystone that Firestorm would imminently be executing a major deal with Firestorm's then-current client Beazley Insurance Company ("Beazley") that would create millions of dollars of recurring revenue for Firestorm, but which was ultimately never realized.  *Id.* ¶¶ 93, 95, 97.  Finally, Plaintiff alleges that Defendants violated the CFAA when, shortly before resigning from Rekor in December 2018, Defendants failed to return corporate records and deleted a large quantity of their corporate emails, including Firestorm emails from before the Firestorm acquisition in January 2016, without permission and in violation of the company code of conduct.  *Id.* ¶¶ 114-32, 137-38.

Importantly for evaluating Defendants' 12(c) motion, as to Plaintiff's first cause of action, for fraudulent omission, it seeks to recover in the alternative (1) rescission of the Purchase Agreement so as to put the parties in the same position they were in prior to execution thereof, or (2) damages.  *Id.* ¶¶ 169-171.  As to Plaintiff's second, third, fourth, and fifth causes of action, for breach of fiduciary duty, violation of the CFAA, conversion, and trespass, all arising in connection with alleged deletion of corporate files and emails, Plaintiff seeks compensatory and punitive damages and injunctive relief requiring Defendants to identify and return the files at issue and enjoining further misconduct.  *Id.* ¶¶ 178, 188-189, 194-195.

Defendants and additional Counterclaim Plaintiff Crisis Risk Strategies, LLC ("CrisisRisk") bring counterclaims against Plaintiff and additional corporate Counterclaim Defendants FSLLC and FFLLC.  *Id*.  Defendants originally brought 20 counterclaims but have withdrawn their fourth counterclaim.  *See* Dkt. No. 103 at n.2.  By the first counterclaim, Rhulen seeks damages arising from alleged breach of his employment agreement with Keystone.  Rhulen alleges that Rekor retaliated against Rhulen for raising concerns about Rekor's CEO Berman when it terminated Rhulen in the fall of 2018.  By the second, third, and fifth counterclaims, Defendants seek damages arising from Rekor's alleged breach and anticipatory breach of its obligations pursuant to the warrants and promissory notes issued to Defendants pursuant to the Purchase Agreement.  By the sixth counterclaim, Defendants seek damages arising from Rekor's allegedly defamatory statements alleging fraud by Defendants.  By the seventh, eighth, and ninth counterclaims, Defendants seek damages, declaratory judgment, and specific performance pursuant to the indemnification provisions of the Firestorm Solutions operating agreement.  By the tenth, eleventh, and twelfth counterclaims, Defendants seek relief with respect to Firestorm Franchising, Inc.'s alleged obligation to indemnify Jim Satterfield.  By the thirteenth, fourteenth, and fifteenth counterclaims, Defendants seek relief with respect to Rekor's obligation to indemnify the Defendants pursuant to the indemnification provisions of the Rekor Bylaws.  By the sixteenth, seventeenth, and eighteenth counterclaims, Defendants seek relief pursuant to the indemnification provisions of the Purchase Agreement.  By the nineteenth counterclaim, Additional Counterclaim Plaintiff CrisisRisk seeks damages from Firestorm for breach of contract on allegations that CrisisRisk, Satterfield, and Loughlin have performed contractual obligations for FSLLC but has not been compensated.  By the twentieth counterclaim, Satterfield

seeks damages from Rekor for breach of a 2019 contract for allegedly boxing and shipping Firestorm documents to Rekor without compensation.  *See* Dkt. No. 71 ¶¶ 343-506.

Defendants also brought counterclaims against the following additional individual counterclaim defendants: Berman; Eyal Hen, the Chief Financial Officer of Rekor; James K. McCarthy, the Chair of the Board of Rekor; and Rekor Board members Paul A. de Bary, Glenn Goord, Christine Harada, David Hanlon, Richard Nathan, and Stephen D. Croxton (the "Additional Individual Counterclaim Defendants").  Dkt. No. 71 ¶¶ 382-88, 401-18.  Upon filing of a motion to dismiss counterclaims four and six against these Additional Individual Counterclaim Defendants, Dkt. Nos. 72, 75, Plaintiff filed a notice of voluntary dismissal as against those Counterclaim Defendants, Dkt. No. 73.  Defendants confirmed at November 12, 2020 conference with the Court that they had withdrawn their counterclaims against all Additional Individual Counterclaim Defendants.  Accordingly, counterclaims four and six are dismissed as to the Additional Individual Counterclaim Defendants, and the motion to dismiss at Dkt. No. 75 is denied as moot.

In September 2019, Defendants' attorney sent a letter to Rekor's outside general counsel demanding that Rekor and Firsetorm indemnify Satterfield, and advance his expenses and attorney's fees, pursuant to the FF Operating Agreement.  In October 2019, Defendants' attorney sent additional letters demanding that Rekor indemnify Defendants and advance their expenses and attorney's fees pursuant to the Rekor Bylaws.  Dkt. No. 54-1 ("Satterfield Decl.") ¶¶ 19-20.  In October 2019, one of Rekor's attorneys sent a letter to Defendants' attorney stating that Rekor and Firestorm Franchising, Inc. would not indemnify any of the Defendants or advance their expenses and attorney's fees.  *Id.* ¶ 21; Dkt. No. 54-30.

## LEGAL STANDARD

"The same standard applicable to [Fed. R. Civ. P.] 12(b)(6) motions to dismiss applies to [Fed. R. Civ. P.] 12(c) motions for judgment on the pleadings." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) (citation omitted).  Thus, the Court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  Defendant's motion must be granted unless the Complaint includes "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  The ultimate question is whether "[a] claim has facial plausibility, [*i.e.*, whether] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  Put differently, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

Although Defendants do not state the particular Federal Rule of Civil Procedure upon which they are relying in support of their motion for advancement of attorney's fees, the Court possesses the inherent power to award fees pursuant to state law when it is sitting in diversity. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 n.31 (1975) ("[I]n an ordinary diversity case where the state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right

thereto, which reflects a substantial policy of the state, should be followed.") (citing 6 J. Moore,

Federal Practice 54.77(2), 1712-1713 (2d ed. 1974)); *Chambers v. NASCO, Inc.*, 501 U.S. 32,

51-52 (1991) (characterizing a court's authority described in *Alyeska* as both flowing from and

limiting the court's inherent power).

## DISCUSSION

### I.      Motion for judgment on the pleadings as to rescission

Defendants make three arguments that Plaintiff's claims for rescission should be

dismissed: that Rekor has an adequate remedy at law, that it is impossible to restore the parties to

the status quo, and that Rekor failed to seek rescission promptly.  The motion fails because each

of these three arguments presents questions of fact that cannot be determined at this stage.

"Under New York law, rescission is an extraordinary remedy" and is "appropriate only

where the breach is found to be material and willful, or, if not willful, so substantial and

fundamental as to strongly tend to defeat the object of the parties in making the contract."

*Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 143 (2d Cir. 2000) (brackets and internal

quotation marks omitted).  To prevail on a claim for rescission, Plaintiff must prove that "that

there is lacking [a] complete and adequate remedy at law and where the status quo may be

substantially restored."  *Syncora Guar. Inc. v. EMC Mortg. Corp.*, 874 F. Supp. 2d 328, 340

(S.D.N.Y. 2012) (quoting *Rudman v. Cowles Commc'ns, Inc.*, 30 N.Y.2d 1, 13 (1972)).  Further,

"[a]n action for rescission must be initiated without unreasonable delay."  *Ballow Brasted*

*O'Brien & Rusin P.C. v. Logan*, 435 F.3d 235, 240 (2d Cir. 2006) (quotation omitted).  However,

generally and in the instant case, determining whether each of these standards has been met

cannot be decided on the pleadings.

As to Defendants' first argument, as has been observed in this District, "[New York law]

expressly provides that plaintiffs may pursue damages for fraud and a claim for rescission in a

single proceeding." *Loreley Fin. (Jersey) No. 3 Ltd*, 2016 WL 5719749, at *3 (S.D.N.Y. Sept. 29, 2016) (quoting C.P.L.R. 3002(e) ("A claim for damages sustained as a result of fraud or misrepresentation in the inducement of a contract or other transaction, shall not be deemed inconsistent with a claim for rescission or based upon rescission.")). Accordingly, "courts applying New York law in this District routinely allow rescission claims 'to survive in the alternative at the pleading stage.'" *Id.* (*quoting Fertitta v. Knoedler Gallery*, LLC, 2015 WL 374968, at *12 (S.D.N.Y. Jan. 29, 2015) (collecting cases)). It follows that a party seeking rescission in the alternative is not required to allege facts that damages are not an available remedy. The imposition of any such requirement would require a party seeking rescission to defeat through fact pleading the alternative damages relief. It is therefore premature to dismiss an alternative pleading for rescission on the grounds that there exists an adequate remedy at law. *See Deutsche Alt-A Sec. Mortg. Loan Tr., Series 2006-OA1 v. DB Structured Prod., Inc.*, 958 F. Supp. 2d 488, 506 (S.D.N.Y. 2013) (sustaining claims for rescissory damages even though plaintiff had "pled the adequate remedy at law of [contract breach]" on the grounds that "rescissory damages [were] pled in the alternative . . .") (quotations omitted).[2] The complaint is fairly read to plead that if damages would not provide complete relief, Plaintiff seeks rescission.

---

[2] Each of the cases on which Defendants rely is distinguishable; none addressed an alternative pleading for damages and rescission based upon a claim for fraud. Rather, each involved ordinary contract-breach claims. *See Mars Advert. Europe Ltd. v. Young & Rubicam, Inc.*, 2013 WL 1790896, at *9 (S.D.N.Y. Apr. 24, 2013) (dismissing rescission claim where the plaintiff had an adequate remedy at law for breach of contract); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 330 (S.D.N.Y. 2000) (same); *Weinstein v. Natalie Weinstein Design Assocs., Inc.*, 928 N.Y.S.2d 305, 309 (2d Dep't 2011) (same); *Slezak v. Stewart's Shops Corp.*, 20 N.Y.S.3d 704, 705 (3d Dep't 2015) (same); *MBIA Ins. Corp. v. Merrill Lynch*, 916 N.Y.S.2d 54, 55 (1st Dep't 2011) (holding the same, after sustaining dismissal of fraud claims for failure to state a claim); *see also Faden Bayes Corp. v. Ford Motor Co.*, 1997 WL 426100, at *2 (S.D.N.Y. July 30, 1997) ("In New York, 'the law awards damages for breach of contract to compensate for injury caused by the breach . . ." (quoting *Freund v. Washington Square Press, Inc.*, 34 N.Y.2d 379, 382 (N.Y. 1974)).

Defendants' second and third arguments also cannot be addressed on the pleadings. Defendants argue that too much time has transpired since the Purchase Agreement was executed—including Rekor benefitting from two years of Defendants' employment as officers, the sale of Rekor stock by Defendants, and Rekor's alleged "gutting" of Firestorm business operations—and therefore the status quo cannot be restored. Dkt. No. 79 at 12. Defendants argue that such "gutting" is evidenced in public filings—in which Rekor refers to Firestorm in the past tense, discloses that it is in litigation with former Firestorm franchisees, and discloses lower Firestorm quarterly revenue as between 2018 and 2019—and in Defendants' Answer which admits that Firestorm no longer has any employees. Dkt. No. 71 ¶¶ 341-42. These facts may ultimately support a finding that restoring the status quo is impossible and rescission unavailable, but at this stage they alone are not sufficient to do so as a matter of law. For one thing, "[i]n deciding a motion to dismiss, a court may take judicial notice of public records . . . 'only to establish their existence and legal effect, or to determine what statements [they] contained . . . *not for the truth of the matters asserted*.'" *Fine v. ESPN, Inc.*, 11 F. Supp. 3d 209, 223 (N.D.N.Y. 2014) (quoting *Liang v. City of New York*, 2013 WL 5366394, at \*5 (E.D.N.Y. Sept. 24, 2013)); *see Piazza v. Fla. Union Free Sch. Dist.*, 777 F. Supp. 2d 669, 678 (S.D.N.Y. 2011) ("In the context of a Rule 12(c) motion, however, the Court should generally take judicial notice to determine what statements [the documents] contain[ ] ... not for the truth of the matters asserted."). Moreover, the fact that Plaintiff enjoyed some benefits of the transaction, including the employment of Defendants, that would not be remitted through rescission "is insufficient to show, at least at the pleadings stage, that the status quo is unavailable." *Fertitta*, 2015 WL 374968, at \*32. Determining the value of Firestorm now, how it compares to its value prior to the Purchase Agreement, and whether restoration of the status quo is possible requires further

factual development.  Accordingly, the Court follows other courts in this District and holds that "Defendant's argument that rescission here will not ensure that the status quo be substantially restored, presents factual issues premature at th[e pleading] stage."  *Deutsche Alt–A Sec. Mortgage Loan Trust, Series 2006–OA1*, 958 F. Supp. 2d at 506 n. 15.

So too must the Court reject Defendants' argument that Plaintiff did not promptly seek rescission.  The Court can take judicial notice of the timing of the complaint and must accept the complaint's allegations about when the Purchase Agreement was executed.  However, a Plaintiff "need not raise [a] claim [for rescission] immediately upon notice of the fraud but is afforded a reasonable period after notice of the fraud within which to consider whether or not to rescind." *Banque Arabe Et Internationale D'Investissement v. Md. Nat'l Bank*, 850 F. Supp. 1199, 1211 (S.D.N.Y. 1994), *aff'd*, 57 F.3d 146 (2d Cir. 1995).  As with determining the restorability of the status quo, "[i]n measuring the reasonableness of a party's delay in bringing suit, courts apply a highly fact-intensive test."  *Loreley Fin. (Jersey) No. 3 Ltd.*, 2016 WL 5719749, at *3 (citing *Ballow*, 435 F.3d at 240 ("The concept that a party's delayed notification must be 'reasonable,' suggests a malleable standard that comports with the overall equitable nature of this remedy.")). "Thus, ordinarily, the question of what is a reasonable time for rescission is a question of fact . . . that cannot be decided on a motion to dismiss."  *Id*. (quotation and brackets omitted) (collecting cases).  It is not clear from the pleadings precisely when Plaintiffs became aware of the alleged fraud.  Nor is it clear that the period that elapsed between the earliest time that the Court can infer from the pleadings that Plaintiffs *could* have become aware of fraud—after the Purchase Agreement was executed in January 2017—and August 2019, when this action was commenced, constitutes an unreasonable delay.  *See, e.g., Arthur Props., S.A. v. ABA Gallery, Inc.*, 2012 WL

2886685, at *3 (S.D.N.Y. July 16, 2012) ("Although a two and a half year delay may well bar any rescission claim here, that cannot be decided on this [12(b)(6)] motion").

Defendant's motion for judgment on the pleadings is denied.

## II.   Motion for advancement of attorney's fees

All Defendants seek advancement for attorney's fees to cover the cost of defending against the claims brought against them and for the counterclaims they have brought pursuant to indemnification and advancement provisions in the Rekor Bylaws.  In addition, Satterfield seeks advancement from Firestorm pursuant to indemnification and advancement provisions in the FF Operating Agreement.

### A.   Indemnification and advancement provisions in the Rekor Bylaws and FF Operating Agreement

The Rekor Bylaws include provisions for the indemnification of directors and officers under certain conditions.  Section 6.1 provides:

6.1 Indemnification of Directors and Officers.

Each person who was or is made a party to . . . any action, suit or proceeding . . . by reason of the fact that he or she is or was a director or officer of the Company (an "Indemnitee"), whether the basis of the Proceeding is alleged action in an official capacity as a director or officer or in any other capacity while serving as a director or officer, shall be indemnified by the Company to the fullest extent authorized by the DGCL or other applicable state law . . . against all expense, liability and loss (including attorneys' fees . . .) reasonably incurred or suffered by Indemnitee in connection therewith; provided, however, the Company shall not indemnify any such Indemnitee in connection with a Proceeding (or part thereof) (i) initiated by such Indemnitee against the Company or any director or officer of the Company unless the Company has joined in or consented to the initiation of such Proceeding or (ii) made on account of Indemnitee's conduct which constitutes a breach of Indemnitee's duty of loyalty to the Company or its stockholders, or is an act or omission not in good faith or which involves intentional misconduct or a knowing violation of the law. For purposes of this Section 6.1, a "director" or "officer" of the Company includes any person who (i) is or was a director or officer of the Company, (ii) is or was serving at the request of the Company as a director or officer of another corporation, partnership, joint venture, trust or other enterprise, or (iii) was a director or officer of a corporation that was a predecessor corporation of the Company or of another enterprise at the request of such predecessor corporation.

Rekor Bylaws, Section 6.1 ("Indemnification Provision").

The Rekor Bylaws also provide for the advancement of attorney's fees owed under

Section 6.1 under certain circumstances.  Section 6.3 provides:

Expenses incurred in defending any Proceeding for which indemnification is required pursuant to Section 6.1 shall be, or for which indemnification is permitted pursuant to Section 6.2[3] following authorization thereof by the Board may be, paid by the Company in advance of the final disposition of such Proceeding upon receipt of an undertaking by or on behalf of the indemnified party to repay such amount if it shall ultimately be determined by final judicial decision from which there is no further right to appeal that the indemnified party is not entitled to be indemnified as authorized in this Article VI.

*Id.*, Section 6.3 ("Advancement Provision").

---

[3] Section 6.2 states: The Company shall have the power, to the maximum extent and in the manner permitted by the DGCL or other applicable state law, as the same exists or may hereafter be amended (but, in the case of any such amendment, only to the extent that such amendment permits the Company to provide broader indemnification rights than such law permitted the Company to provide before such amendment), to indemnify each of its employees and agents

The FF Operating Agreement—which governs FFLLC, of which Satterfield was an officer both before and after the Purchase Agreement—also contains indemnification and advancement provisions.  Section 16(a) and (b) provide:

(a) <u>Right to Indemnification.</u>

    (i)    Any person who is or was a Member or officer of the Company and who is or may be a party to any civil action because of his/her/its participation in or with the Company, and who acted in good faith and in a manner which he/she/it reasonably believed to be in, or not opposed to, the best interests of the Company may be indemnified and held harmless by the Company.
        . . .

(b) <u>Advancement of Expenses.</u>  Expenses (including attorney's fees) incurred by an indemnified person in defending any proceeding shall be paid in advance of the proceedings [*sic*] conclusion.  Should the indemnified Member or officer ultimately be determined to not be entitled to indemnification, that Member or officer agrees to immediately repay to Company all funds expended by the Company on behalf of the member or officer.

FF Operating Agreement, §16(a)-(b)

> **B.** **Advancement for fees, pursuant to the Rekor Bylaws, incurred in defending against Plaintiff's claims is granted in part**

---

against all expense, liability and loss (including attorneys' fees, judgments, fines, ERISA excise taxes or penalties and amounts paid in settlement) reasonably incurred or suffered by such employees and agents in connection therewith; provided, however, the Company shall not indemnify any such employee or agent in connection with a Proceeding (or part thereof) (i) initiated by such employee or agent against the Company or any director or officer of the Company unless the Company has joined in or consented to the initiation of such Proceeding or (ii) made on account of such employee's or agent's conduct which constitutes a breach of such employee's or agent's duty of loyalty to the Company or its stockholders, or is an act or omission not in good faith or which involves intentional misconduct or a knowing violation of the law. For purposes of this Section 6.2, an "employee" or "agent" of the Company includes any person other than a director or officer who (i) is or was an employee or agent of the Company, (ii) is or was serving at the request of the Company as an employee or agent of another corporation, partnership, joint venture, trust or other enterprise, or (iii) was an employee or agent of a corporation that was a predecessor corporation of the Company or of another enterprise at the request of such predecessor corporation.

The complaint brings claims based on Defendants' conduct both before the execution of the Purchase Agreement and, critically, before the Defendants entered into employment agreements with Keystone, as well as after the Purchase Agreement, while Defendants were employed as officers by Keystone (and subsequently Rekor) and Firestorm as a subsidiary of Rekor.  In the former category is Rekor's claim for fraudulent omission in connection with allegedly misleading statements and omissions about the Side Letters.  In the latter category are Rekor's claims for breach of fiduciary duty, violation of the CFAA, conversion, and trespass in connection with Defendants' alleged deletion of company files and emails.

Defendants argue that advancement is required under Rekor's Bylaws for claims based on their conduct before the execution of the Purchase Agreement and employment agreements because FFLLC and FSLLC—of which Defendants were officers—were both predecessors of Rekor.  *See* Rekor Bylaws, Section 6.1 ("For purposes of this Section 6.1, a "director" or "officer" of the Company includes any person who . . . (iii) was a director or officer of a corporation that was a predecessor corporation of the Company . . .").  Defendants cite the definition of predecessor provided by federal securities laws at 17 C.F.R. § 240.12b–2, which states:

> The term "predecessor" means a person the major portion of the business and assets of which another person acquired in a single succession or in a series of related successions in each of which the acquiring person acquired the major portion of the business and assets of the acquired person.

Because Firestorm was acquired by Rekor, Defendants argue, it should be understood as a predecessor for purposes of indemnification, and Defendants should be entitled to indemnification for qualifying claims against them during their employment at Firestorm.

The Rekor Bylaws, however, specifically reference the Delaware General Corporation Law ("DGCL") and provide for indemnification "to the fullest extent authorized by the DGCL or

other applicable state law." *See* Rekor Bylaws, Section 6.1.  "[T]he bylaws of a Delaware

corporation [are] formed within the statutory framework of the DGCL." *Boilermakers Local 154

Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 939 (Del. Ch.) (citations omitted); *see also Charney v.

Am. Apparel, Inc.*, 2015 WL 5313769, at *14 (Del. Ch. Sept. 11, 2015) ("Although 8 Del. C. §

145(f) allows corporations to provide indemnification rights via contract, substantial authority

supports the proposition that such contractual provisions must comply with the requirements

contained in the rest of 8 Del. C. § 145"); *Reinhard & Kreinberg v. Dow Chem. Co.*, 2008 WL

868108, at *2 (Del. Ch. Mar. 28, 2008) ("Although courts use the tools of contractual

interpretation when construing bylaw provisions relating to indemnification and advancement,

they simultaneously apply the patina of section 145's policy.").  Thus, the Rekor Bylaws must be

interpreted *in pari materia* with the DGCL.

Section 145 of the DGCL, which addresses the indemnification of corporate officers and

directors, informs the appropriate interpretation of "predecessor corporation."  Section 145(h)

provides that, "for purposes" of Section 145:

> [R]eferences to "the corporation" shall include, in addition to the resulting
> corporation, any constituent corporation (including any constituent of a constituent)
> absorbed in a consolidation or merger which, if its separate existence had
> continued, would have had power and authority to indemnify its directors, officers,
> and employees or agents, so that any person who is or was a director, officer,
> employee or agent of such constituent corporation, or is or was serving at the
> request of such constituent corporation as a director, officer, employee or agent of
> another corporation, partnership, joint venture, trust or other enterprise, shall stand
> in the same position under this section with respect to the resulting or surviving
> corporation as such person would have with respect to such constituent corporation
> if its separate existence had continued.

8 DGCL § 145(h).  Thus, "predecessor corporation" as used in the Rekor Bylaws is best

understood as a "constituent corporation . . . absorbed in a consolidation or merger" as used in

the DGCL.

Moreover, as Defendants concede, FFLLC and FSLLC were not absorbed by Rekor in a consolidation or merger.  Hr'g Tr. 15:2-9 (Nov. 4, 2020).  "[M]erger and Consolidation" are "processes that lead to one resulting corporation."  *Paulsen v. Stifel, Nicolaus & Co.*, 2019 WL 2415213, at *5 (S.D.N.Y. June 4, 2019).  Section 251(a) of the DGCL states, "Any 2 or more corporations of this State may merge into a single surviving corporation, which may be any 1 of the constituent corporations or may consolidate into a new resulting corporation formed by the consolidation, pursuant to an agreement of merger or consolidation . . . ."  8 DGCL § 251 (emphasis added).  After a merger or consolidation is completed, there is one "surviving corporation," *id*. § (b)(3); the merged corporations "cease" and "become a new corporation, or [are] merged into 1 such corporations," *id*. § 259(a).  Under the DGCL, "the purchaser of stock, without any subsequent 'merger,' does not leave us with one corporation but two, one of which is the wholly-owned subsidiary of the other."  *Id*.; *see also Brandywine v. New Castle Cty*., 2004 WL 2050498, at *3 (Del. Super. Ct. Sept. 10, 2004) ("A merger is a combination or amalgamation of two or more separate corporations into one."), *rev'd on other grounds*, *Acadia Brandywine Town Ctr. LLC v. New Castle Cty.*, 879 A.2d 923 (Del. 2005); *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 851 (Del. 1998) (consolidation results in "completely new entity"); *Fidanque v. Am. Maracaibo Co.*, 33 Del. Ch. 262, 269 (Del. Ch. 1952).  FFLLC and FSLLC may be subsidiaries of Rekor under that definition; they are not companies that were absorbed or consolidated and therefore are not predecessor corporations under the Bylaws.

Defendants' argument—based on a definition cherry-picked from the federal securities laws–is not to the contrary.  The definition of "successor" in the SEC regulations under the Securities Exchange Act of 1934 was crafted with the objectives of that law in terms of disclosure in mind.  It has nothing whatsoever to do with the intent of Rekor or the expectations

of Defendants with respect to the Rekor Bylaws. *See Ladjevardian v. Laidlaw*, 431 F. Supp. 834, 840 n. 4 (S.D.N.Y. 1977) (holding that the definition of "successor" in SEC regulations did not control for purposes of analyzing transferee liability following a merger).

Accordingly, Defendants' motion for advancement of attorney's fees pursuant to the Rekor Bylaws in connection their defense against the fraudulent omission claim, which is based upon Defendants' conduct prior to the execution of the purchase agreement, is denied.

Plaintiff's other claims, however, arising in connection with Defendants' alleged deletion of company emails and files, are based upon the Defendants' conduct after execution of the Purchase Agreement. Defendants are entitled to advancement of attorney's fees as to these claims upon receipt by Plaintiff of an appropriate undertaking from Defendants. As noted above, the Second Amended Complaint alleges that in December 2018, and while they were still officers of Rekor and Firestorm, Defendants deleted a large quantity of their corporate emails and failed to return certain corporate records. SAC ¶¶ 53, 114-32, 137-38; Dkt. No. 54-1 ¶¶ 16-18; *see also* SAC ¶ 53; Dkt. No. 54-1 ¶¶ 16-18; Dkt. No. 54-24 (Satterfield was an officer of Firestorm at the time of email deletion). These allegations are the basis for counts two through four of the SAC for breach of fiduciary duty, violation of the CFAA, conversion, and trespass. Thus, Rhulen and Loughlin—in their capacity as Rekor officers—and Satterfield, as a person who was required by the Purchase Agreement to serve as an officer of Firestorm, were beneficiaries of the Rekor Bylaws and the indemnification and advancement provisions therein. Therefore, the Rekor Bylaw indemnification and advancement provisions, on their face, appear to entitle Defendants to advancement of fees as to counts two through four of the SAC upon the submission of an appropriate undertaking.

Plaintiff makes two arguments for why Defendants are not entitled to advancement. First, Plaintiff argues that the Advancement Provision does not apply because Defendants were not made party to the lawsuit "by reason of the fact" that they were "a director or officer" of Rekor.  Plaintiff also argues that the underlying proceeding was "made on account of Indemnitee's conduct which constitutes a breach of Indemnitee's duty of loyalty to the Company or its stockholders, or is an act or omission not in good faith or which involves intentional misconduct or a knowing violation of the law," and therefore indemnification does not apply. Dkt. No. 61 at 9-10.  Both arguments fail.

The right to advancement and the right to indemnification are "separate and distinct legal actions."  *Homestore, Inc. v. Tafeen*, 888 A.2d 204, 212 (Del. 2005).  "Although the right to indemnification and advancement are correlative . . . [t]he right to advancement is not dependent on the right to indemnification."  *Id.* at 212-213.  Indeed, Section 145 of the DGCL "expressly contemplates that corporations may confer a right to advancement that is *greater* than the right to indemnification and recognizes that advances must be repaid if it is ultimately determined that the corporate official is not entitled to be identified."  *Id.* (citations omitted).

As to Plaintiff's first argument, a claim is properly understood as brought "by reason of" an employee's status as a director or officer if there is some "nexus or causal connection between [the underlying lawsuit] and one's official corporate capacity."  *Id.* at 214.  "[T]he nexus is established if the corporate powers were used or necessary for the commission of the alleged misconduct. This language has been interpreted broadly, and includes all actions against an officer or director for wrongdoing that he committed in his official capacity, and for all misconduct that allegedly occurred in the course of performing his day-to-day managerial duties."  *Imbert v. LCM Interest Holding LLC*, 2013 WL 1934563, at *5 (Del. Ch. Feb. 7, 2013)

(internal quotations and citations omitted).  The nexus is analyzed "without regard to one's motivation for engaging in [the] conduct [in question]." *Tafeen*, 888 A.2d at 214.  Thus, "[i]f the conduct resulting in the prosecution was done in [the person's] capacity as a corporate officer, without regard to what his motivation may have been, then the ensuing prosecution was 'by reason of the fact that' he was a corporate officer." *Perconti v. Thornton Oil Corp.*, 2002 WL 982419, at *4 (Del. Ch. May 3, 2002); *see also Reddy v. Elec. Data Sys. Corp.*, 2002 WL 1358761, at *5 (Del. Ch. June 18, 2002) ("It is not uncommon for corporate directors, officers, and employees to be sued for breach of the fiduciary duty of loyalty, and to have to defend claims that they took official action for the primary purpose of diverting corporate resources to their own pocketbooks . . . Therefore it is highly problematic to make the advancement right of such officials dependent on the motivation ascribed to their conduct by the suing parties.").  For example, in *Perconti*, indemnification was required for a defendant alleged to have engaged in criminal conduct for his own personal benefit because the defendant's "use of corporate powers entrusted to him was critical to, and instrumental in, the carrying out of the scheme in which he participated and because of which the [i]ndictment issued." *Perconti*, 2002 WL 982419, at *7.

Here, as pleaded, Defendants "used" corporate powers to engage in the alleged misconduct and such misconduct was done in Defendants' capacity as officers of Rekor or its subsidiaries.  There is a nexus between Defendants' status as officers of Rekor and Firestorm and their access to and control over their corporate email addresses and files; they were credentialed to access their own emails by virtue of their corporate status, and the files they allegedly deleted—their corporate emails—were files sent to and from them in their official corporate capacity.  The motive for Defendants' action in supposedly deleting work emails is irrelevant; an officer may delete emails for permissive reasons or pernicious reasons.

At oral argument, Plaintiff contended that because a fiduciary duty exists "independent of [Defendants'] status as officers and directors" and "it was not necessary for them to be an officer or director for liability to attach with respect to destroying data," the claims do not satisfy the "by reason of" requirement in the indemnification provision.  Hr'g Tr. 22:1-9 (Nov 4. 2020).  The implication was that because employees, just like officers and directors, had the same obligation to retain documents that Plaintiff contends Defendants violated as officers, Defendants' conduct was not "by reason of" them being officers and thus could not give rise to an indemnification right.  That argument fundamentally misunderstands Delaware law.  If accepted, it would blow a huge loophole in the protection intended to be accorded to officers and directors by Rekor and every other corporation that extends the standard indemnification and advancement provision to its officers.

The right to indemnification and to advancement under Delaware law does not depend upon the theory under which the officer is sued and whether he is alleged to have violated his duty as an officer.  It depends upon whether the corporate office was either "used" or "necessary" to the violation, which includes all alleged misconduct by an officer that "occurred in the course of performing his day-to-day managerial duties."  *Suk Joon Ryu v. Hope Bancorp, Inc.*, 2018 WL 1989591, at *8 (S.D.N.Y. Apr. 26, 2018) (quoting *Imbert*, 2013 WL 1934563, at *5)) (internal quotations and citations omitted).  Corporate officers are frequently sued for, and entitled to advancement for, claims of conduct that if they had also engaged in as employees (without the corporate office) would be wrongful.  Consider the employee who (without holding corporate office) provides false information to be used in a publicly filed financial statement.  Or an employee who uses corporate funds to engage in what the corporation's board or its shareholders suing derivatively allege was a self-interested transaction.  No one would doubt that

such conduct would be wrongful if engaged in without the corporate office.  The corporate

officer does not enjoy protection solely with respect to action that can be peculiarly only

accomplished by an officer or that gives rise to liability solely because the person is an officer.

He or she is entitled to advancement and (assuming that no finding that would disqualify it is

made) indemnification because he or she is an officer and in order to provide him or her freedom

of action in that capacity.

The case that Plaintiff cites, *Ryu v. Hope Bancorp, Inc.*, thus, does not support its

argument.  *Ryu* involved a claim for advancement under similarly phrased bylaws by a corporate

officer (Ryu) who was alleged to have discovered a fellow employee's embezzlement and

"instead of reporting it, encouraged her to continue embezzling and pay the money to him or

conspired together with [her] to embezzle."  *Ryu*, 2018 WL 1989591, at *9.  The employee later

admitted to the embezzlement and implicated Ryu; Ryu sought advancement of legal fees and

expenses he incurred in connection with investigations of the employee's conduct by the United

States Department of Justice and the Federal Bureau of Investigation and in connection with a

related lawsuit filed by the company for conversion, fraud, civil conspiracy to defraud, breach of

fiduciary duty, and related frauds.  With a limited exception, the court held that Ryu was entitled

to such advancement and granted him summary judgment over the corporation's objection.  The

court held that the "by reason of" language contained in the bylaws should be "interpreted

broadly" to extend to "wrongdoing that he committed in his official capacity, and for *all*

misconduct that allegedly occurred in the course of performing his day-to-day managerial

duties."  *Id.* at *9 (quoting *Imbert*, 2013 WL 1934563, at *5) (emphasis added).  Ryu was

entitled to advancement because the government investigations had a "nexus to Ryu's status as

an officer."  *Id.*  "[W]hile serving as an officer of BankAsiana, [he] either uncovered [the

employee's] embezzlement scheme and, instead of reporting it, encouraged her to continue embezzling and pay the money to him or conspired together with [the employee] to embezzle with BankAsiana." *Id.* Specifically, and in addition, the complaints alleged that the employee, "aided and abetted by Ryu, used her credentials to access BankAsiana's computer system and made a number of unauthorized withdrawals from Bank Asaiana's customers' certificate of deposit ('CD') accounts, and thereafter removed such funds in cash from the vault." *Id.* (internal citations and quotations omitted). It was irrelevant to the court's conclusion whether Ryu's conduct could have been committed by an employee who did not hold the officer status and whether the claims turned upon duties owed as an officer. The relevant question was a factual one—whether there was a factual nexus between the underlying proceedings and Ryu's corporate capacity.

The court held that advancement was not required only for a limited set of claims—the alleged theft of two computers that contained confidential and proprietary information—but the court's rationale has no application to this case. *Id.* Analogizing to cases that "related to a personal obligation of an officer to the corporation," such as a *clalim* to enforce an employment contract or a claim that a former officer had taken too much vacation time, for which advancement was not available, *id.*, at \*8 (citing *Weaver v. ZeniMax Media, Inc.*, 2004 WL 243163, at \*16-17 (Del. Ch. Jan. 30, 2004) and *Stifel Fin. Corp. v. Cochran*, 809 A.2d 555, 562 (Del. 2002), the court in *Ryu* held that the theft of the two computers was not conduct for which Ryu was entitled to advancement. Ryu's conduct was not at all enabled or facilitated by Ryu's corporate position; it could have been equally accomplished and would have been equally wrongful by any trespasser onto the corporate property. It was incidental that Ryu happened to be on the corporate premises because he was an officer. *Id.* at \*9 ("Ryu does not . . . claim that

he only had access to any . . . confidential and proprietary information because of [his] status as an officer of [the corporation]. *Nor could he colorable claim that he was only able to take the computers by reason of the fact that he was an officer of [the corporation].*")  (emphasis added).

The underlying claims here are therefore more similar those in both *Perconti* and the claims for advancement permitted in *Ryu*, each of which included allegations, *inter alia*, that corporate officers used their status to "hide their improper conduct."  *Perconti*, 2002 WL 982419, at *1; *see id*. at *6 ("[Perconti's] position facilitated the hiding of his conduct from Mr. Thornton."); *Ryu*, 2018 WL 1989591, at *9 ("Perconti [could not] have 'hid[den] his conduct' without his position.  The same, allegedly, is true of Ryu.").  Likewise here, the SAC alleges, *inter alia*, that Loughlin, Rhulen, and Satterfield secretly accessed their corporate email accounts, SAC ¶¶ 131-32, and that "Defendants had a motive *and opportunity* to illegally and improperly destroy their emails and documents in order to conceal their misconduct once they had decided to resign from Rekor . . . ."  SAC ¶ 140 (emphasis added).  Such opportunity existed because Defendants were corporate officers and had control over emails and corporate files made available to them in that capacity.  The indemnification provision's "by reason of" standard is therefore satisfied.

Defendants' alleged motive for their alleged conduct is irrelevant, *see infra*, as is the legal theory brought against them.  And, while it is true that an act of document destruction can constitute a dereliction of an officer or employee's duties both as a matter of corporate policy/fiduciary duty and under general law, it is equally true that—depending on context and motive—such conduct can be taken in satisfaction of the officer's duties and in furtherance of a corporation's interests.  *Cf. Arthur Andersen LLP v. United States*, 544 U.S. 696, 704 (2005) ("'Document retention policies,' which are created in part to keep certain information from

25

getting into the hands of others, including the Government, are common in business. It is, of course, not wrongful for a manager to instruct his employees to comply with a valid document retention policy under ordinary circumstances" (internal citation omitted); *United States v. Quattrone*, 441 F.3d 153, 179-180 (2d Cir. 2006) (holding that a jury instruction as to obstruction of justice was erroneous where it did not require the jury to make findings regarding defendant's intent in advising colleagues to delete computer files, and where defendant's theory of the case "relied on several innocent explanations for his conduct . . . [each of which] has some basis in the record").

Thus, Defendants' claim to advancement with respect to the second through fifth counts of the SAC fall squarely within the language and the intent of Rykor's Bylaws. Defendants engaged in the conduct while officers of Rekor or Firestorm and used their corporate offices to engage in the conduct. The conduct was not outside the scope of that engaged in by corporate officers (and others) in their day-to-day activities. The Rekor Bylaws (and those of others similarly drafted) are drafted both to incentivize individuals to assume a corporate office (with all of the risk of lawsuit that comes with that office) and to allow them to execute the functions of that corporate office free from fear that if their conduct is challenged without basis they will have to front the fees that will demonstrate that their conduct was lawful. *See Stifel Fin. Corp.*, 809 A.2d at 561 ("The invariant policy of Delaware legislation on indemnification is to promote the desirable end that corporate officials will resist what they consider unjustified suits and claims, secure in the knowledge that their reasonable expenses will be borne by the corporation they have served if they are vindicated . . . [and, more broadly] to encourage capable men to serve as corporate directors, secure in the knowledge that expenses incurred by them in upholding their honesty and integrity as directors will be borne by the corporation they serve.")

(internal quotations omitted).  If the Rekor Bylaws are to satisfy that purpose, they must be extended to the conduct like that alleged in counts two through five, which may not have occurred at all and which—if it did occur—may not have been unlawful.

Plaintiff's second argument suffers a similar fate.  It is true that the complaint charges Defendants with serious misconduct.  If it did not, there would be little occasion for them, or anyone else, to invoke the advancement provision of the Rekor Bylaws.  But the charge of serious misconduct that is the occasion for requesting advancement cannot also provide the excuse for denying it.  The Rekor Bylaws, by their express language, contemplate the circumstances where a corporate officer is entitled to the advancement of attorney's fees and expenses even though it might ultimately be determined that the officer is not entitled to indemnification.  It is for that reason that Defendants are required to sign an undertaking to return the advanced fees and expenses if it is "determined by final judicial decision from which there is no further right to appeal that [they are] not entitled to be indemnified as authorized in this Article VI."  Rekor Bylaws, Section 6.3.  It follows that the mere assertion of allegations of bad faith or intentional misconduct or a knowing violation of the law cannot defeat an application for advancement before those allegations are substantiated in a judgment as to which there is no further right to appeal. *See Kaung v. Cole Nat. Corp.*, 884 A.2d 500, 510 (Del. 2005) ("[A]n advancement proceeding is summary in nature and not appropriate for litigating indemnification or recoupment.  The detailed analysis required of such claims is both premature [at the advancement stage] and inconsistent with the purpose of a summary proceeding.") (citation omitted).

The Delaware courts have consistently recognized that advancement provisions are critical to "attracting the most capable people into corporate service," and promote a "salutary

public policy" of inducing persons to serve as officers and directors who would not be willing to serve but for the protection they receive to defend against lawsuits, meritorious or not meritorious. *Tafeen*, 888 A.2d at 218. That policy would be defeated, and the salutary purposes of advancement provisions undermined, if a corporate officer or director lost her rights to indemnification or advancement in precisely those cases for which the provision is designed— those in which the officer or director needs to defend herself against accusations of bad faith or a breach of a duty of loyalty. *See id*. ("Although advancement provides an individual benefit to corporate officials, it is actually a desirable underwriting of risk by the corporation in anticipation of greater corporate-wide rewards for its shareholders. The broader salient benefits that the public policy behind section 145 of the [DGCL] seeks to accomplish for Delaware corporations will only be achieved if the promissory terms of advancement contracts are enforced by courts even when corporate officials . . . are accused of serious misconduct."); *see, e.g.*, *Bergonzi v. Rite Aid Corp.*, 2003 WL 22407303, at *3 (Del. Ch. Oct. 20, 2003) (rejecting the defense to advancement that former CFO had not satisfied statutory standards of conduct for indemnification, notwithstanding guilty plea by former CFO in criminal proceeding for which advancement was sought; because the CFO had not been sentenced, and therefore the criminal proceeding had not reached final judgment, the court held that it would be premature to decide if indemnification was permitted); *see also* 1 Corp. & Commercial Practice in Delaware Court of Chancery § 9.02 (2019) ("The Court of Chancery has consistently rejected" the defense to an advancement claim that "the prospective indemnitee's actions that are the subject of the underlying litigation were not in accord with the statutory standards of conduct" when "the claim is one for advancement, an action in which the question of compliance with the statutory conduct necessarily has yet to be determined") (collecting cases); *Trascent Mgmt. Consulting*, LLC v.

Bouri, 152 A.3d 108, 110 (Del. 2016) ("Where a party has employed an officer under a contract where that party agreed to provide for advancement for certain claims until a court's final judgment that the officer is not entitled to indemnification, that party may not escape the obligation by injecting into a summary advancement proceeding a defense based on the argument that the underlying contract under which the parties are operating is invalid altogether, because of fraud in the inducement. As the Court of Chancery properly found, to allow such a defense . . . would permit [the corporation] to escape its clear promise to make advancement until a court found indemnification inappropriate.").  If Rekor ultimately is successful in its claim, it may be able to collect on Defendants' undertaking.  But those claims do not license it to deprive Defendants of the funds they need to defend themselves in violation of the Rekor Bylaws.

Counts two through five of the instant lawsuit bring allegations based on Defendants' conduct as officers of Rekor and Firestorm.  The Rekor Bylaws mandate advancement of legal fees to officers in such circumstances.  Defendants' motion is granted as to advancement of legal fees in connection with defending against counts two through five of the SAC.

### C.   Advancement for Satterfield's fees incurred in defending against the fraudulent omission claim, pursuant to the FFLLC Operating Agreement, is granted

Defendant Satterfield was employed as an officer of FFLLC both before and after the signing of the Purchase Agreement.  Satterfield Dec. ¶ 3.  Accordingly, pursuant to the indemnification and advancement provisions in the FF Operating Agreement, Satterfield is entitled to advancement from FFLLC for legal fees incurred in defending against Plaintiff's claim for fraudulent omission.  The complaint alleges, *inter alia*, that Satterfield and the other Defendants made misleading statements in connection with negotiating the Purchase Agreement

whereby Rekor would acquire Firestorm.  Satterfield's "use of corporate powers entrusted to him was critical to, and instrumental in" the alleged misconduct, insofar as any alleged misstatements were made by him in his capacity as an officer of FFLLC.  *Perconti*, 2002 WL 982419, at *7. He is therefore party to the action "because of his . . . participation in or with [FFLLC]."  FF Operating Agreement §16(a)(i).  Under the FF Operating Agreement's mandatory advancement provision, Satterfield is entitled to advancement by FFLLC for fees incurred in defending against the fraudulent omission claim.  *Id.* §16(b) ("Expenses (including attorney's fees) incurred by an indemnified person in defending any proceeding *shall* be paid in advance of the proceedings [*sic*] conclusion.") (emphasis added).

> **D.** **Advancement of fees for litigating Defendants' counterclaims is granted in part**

The parties also dispute whether Defendants are entitled to advancement with respect to their counterclaims.  Defendants brought twenty counterclaims.  The fourth counterclaim, for breach of fiduciary duty, has been voluntarily dismissed, leaving nineteen counterclaims as to which Defendants argue they are entitled to advancement.  As elaborated above, counterclaims one through six are for breach of employment agreement, breach warrants, anticipatory breach of warrants, breach of fiduciary duty, anticipatory breach of promissory notes, and libel, respectively.  Counterclaims seven through eighteen are for indemnification as well as declaratory judgment and specific performance related to indemnification brought against Rekor, FFLLC, and FSLLC, pursuant to four instruments: The Purchase Agreement, the FSLLC Operating Agreement, the FFLLC Operating Agreement, the Rekor Bylaws.  Counterclaims nineteen and twenty are for breach of contract, the former brought by Counterclaim Plaintiff CrisisRisk for an alleged failure to pay CrisisRisk invoices, and the latter brought by Satterfield for an alleged failure to compensate Satterfield for boxing and shipping documents to Rekor.

Under Delaware law, corporate officers and directors are entitled to advancement for any counterclaim that is "(1) 'necessarily part of the same dispute,' in the sense that it qualifies as a compulsory counterclaim under the prevailing Delaware and federal procedural standard; and (2) 'advanced to defeat, or offset' the affirmative counterclaims.'" *Pontone v. Milso Indus. Corp.*, 2014 WL 2439973, at *5 (Del. Ch. May 29, 2014) (quoting *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992)).[4]  Legal expenses "incurred in pursuit of merely permissive counterclaims, which do not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . cannot justifiably be construed as part of an [officer's] defense of claims brought against her by a corporation." *Reinhard*, 2008 WL 868108, at *3 (internal quotations omitted).

---

[4] In the supplemental briefing requested by the Court on the issue of advancement, Plaintiff does not argue that Defendants' claims are not compulsory.  Instead it argues that whether or not the claims are compulsory, they do not directly respond to or negate the affirmative action.  *See* Dkt. No. 102 at 3-5 (citing *Zamanv v. Amadeo Holdings, Inc.*, 2008 WL 2168397, at *38 (Del. Ch. May 23, 2008) (holding "a counterclaim [is subject to advancement] if it defends the corporate official by directly responding to and negating the affirmative claim")).  Plaintiff misstates the legal standard.  In *Pontone*, the Delaware Chancery Court clarified that *Zaman* should not be read to preclude from advancement any claim merely because it does not "respond to and negate" an affirmative counterclaim, as such a reading conflicts with a prior Delaware Supreme Court holding, in *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992), that compulsory counterclaims are subject to advancement where they are "advanced to defeat, *or offset*" the claims to which they are responding.  2014 WL 2439973, at *5.  *Pontone* held:

> To the extent that the standard employed by the Court in Zaman can be read to make compulsory counterclaims that offset, but cannot defeat, affirmative claims ineligible for advancement, I consider that reading to be in conflict with the standard articulated and applied in *Roven*. When there is an apparent conflict between this Court's and the Delaware Supreme Court's statement of the law, the latter is controlling. Thus, I hold the governing standard to be the one established in *Roven*, under which compulsory counterclaims "advanced to defeat, or offset" affirmative claims may be subject to advancement. This conclusion also comports with Delaware's public policy in favor of advancement.

*Id.* at *5.  Thus, Plaintiff is entitled to advancement for counterclaims that are compulsory and that are advanced to defeat or offset the affirmative claims.

A counterclaim is compulsory if it "arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim . . ." Fed. R. Civ. P. 13(a).  To determine whether Rule 13(a) is satisfied, courts in this Circuit use the "logical relationship" test.  *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)).  "Although the 'logical relationship' test does not require an 'absolute identity of backgrounds,' the 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.'"  *Jones*, 358 F.3d at 209 (quoting *Aquavella*, 615 F.2d at 22; *Critical-Vac Filtration Corp. v. Minuteman Int'l, Inc.*, 233 F.3d 697, 699 (2d Cir. 2000)).

The second, third, and fifth counterclaims allege breach of warrants and promissory notes provided under the Purchase Agreement.  These counterclaims are compulsory as to Plaintiff's fraudulent omission claim and are advanced to defeat or offset the affirmative claims, as they seek to enforce the very Purchase Agreement that Plaintiff seeks to rescind (or otherwise recover damages against) on the grounds that the agreement was fraudulently induced.  *See Adam v. Jacobs*, 950 F.2d 89, 92 (2d Cir. 1991) (finding that claims for enforcement of contract should have been filed as compulsory counterclaims to original claims seeking rescission of contract on grounds that it was induced by fraud); *Skyline Steel, LLC v. Pilepro, LLC*, 2015 WL 999981, at *5 (S.D.N.Y. Mar. 5, 2015) ("Courts have consistently found that counterclaims based on a contract are compulsory in actions relating to the same contract.").  These counterclaims are not compulsory, however, as to Plaintiff's counts two through five regarding email destruction.  Defendants' counterclaims to enforce warrants and promissory notes concern their entitlement to those notes pursuant to the Purchase Agreement.  Plaintiff's claims two through five concern Defendants' alleged misconduct as officers of Rekor and Firestorm nearly two years after

execution of the Purchase Agreement.  The only apparent connection between the claims is that

Defendants' employment agreements—the duties attendant to which Plaintiff claims were

violated when the Defendants destroyed emails—were contemplated by the Purchase

Agreement.  This is not sufficient.  *Cf. Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d

447, 467 (S.D.N.Y.2008) ("The only possible connection between Plaintiffs' overtime claims and

the counterclaims is that they arise out of the same employer-employee relationship.  This

slender reed will not support a finding that the counterclaims are compulsory.").

Because Defendants are not entitled to indemnification with respect to Plaintiff's claim

for fraudulent omission under the Rekor Bylaws, *see supra*, they are also not entitled to

indemnification for counterclaims two, three, and five thereunder.  Because Defendant

Satterfield is entitled to indemnification with respect to Plaintiff's fraudulent omission claim

pursuant to the FFLLC Operating Agreement, *see supra*, he alone is entitled to indemnification

for the cost of litigating Defendants' counterclaims two, three, and five.

Defendants' remaining claims are not compulsory and therefore indemnification and

advancement are not required under the standard articulated in *Pontone* and *Rover*.  The first,

nineteenth, and twentieth counterclaims are each for breach of contract, brought by Rhulen,

Additional Counterclaim Plaintiff CrisisRisk, and Satterfield respectively.  The first counterclaim

alleges that Rekor retaliated against Rhulen when it demoted him in fall 2018 after Rhulen

allegedly raised issues concerning the conduct of Rekor's CEO, Berman.  *See* Dkt. No. 71

¶¶ 344-49.  The nineteenth counterclaim alleges that Rekor has breached its contract with

CrisisRisk, with whom it allegedly contracted for services, by failing to pay invoices.  *Id*. ¶¶ 493-

97.  The twentieth counterclaim alleges that Rekor breached a contract it entered into with

Satterfield in January 2019—after Defendants all resigned from Rekor—by which Satterfield

would box certain documents at the Firestorm offices in Georgia and ship them to Rekor's headquarters.  None of the "essential facts" that will prove or defeat these claims—whether Rhulen was demoted because he raised concerns about Berman, and whether CrisisRisk and Satterfield were contractually entitled to compensation they have not received—are "logically connected" to the facts of the affirmative claims about email and document destruction as to which the Defendants are entitled to advancement.  *See Jones*, 358 F.3d at 209.  They involve different legal instruments and alleged facts than the instruments and facts that allegedly give rise to Defendants' liability for destroying emails and fraudulently inducing the purchase agreement.  They are not compulsory.

The sixth counterclaim, for libel, is also not compulsory.  That counterclaim alleges that Rekor falsely stated in an August 2019 Form 10-Q that Defendants "fraudulently induced the execution of the [Purchase Agreement]." Dkt. No. 71 ¶ 405.  The Second Circuit has held that a claim for libel is not a compulsory counterclaim to an affirmative action alleging violations that are described in the allegedly libelous statement.  *Harris v. Steinem*, 571 F.2d 119, 123-24 (2d Cir. 1978); *see Sanders v. New World Design Build, Inc.*, 2020 WL 1957371, at *3 (S.D.N.Y. Apr. 23, 2020).  That is because "[w]hile it is true that . . . success on the main claim would probably . . . defeat[] the counterclaim, essential issues in the counterclaim might well have included [issues regarding whether the counterclaimants were public figures, whether scienter requirements were met, and whether state law privileges applied]."  *Harris*, 571 F.2d at 124.  Moreover, even if the sixth counterclaim for libel were compulsory as to Plaintiff's fraudulent omission claim, as elaborated above, that is not the affirmative claim as to which Defendants are entitled to indemnification under the Rekor Bylaws.  The claim for libel has no logical relationship whatsoever to Plaintiff's claims in connection with deletion of emails.

Finally, although the remaining counterclaims, counts seven through eighteen for indemnification pursuant to the Rekor Bylaws, the FF Operating Agreement, and the FS Operating Agreement, are not compulsory,[5] as a substantive matter under Delaware law, Defendants are entitled to "fees on fees" for the claims for advancement to the extent they have prevailed on such claims through this motion.  In *Stifel*, the Delaware Supreme Court held that a bylaw provision authorizing indemnification to the "fullest extent permitted by law"—the same language provided by the Rekor Bylaws—required indemnification of expenses incurred in an action to enforce the indemnification obligation:

> We hold that indemnification for expenses incurred in successfully prosecuting an indemnification suit are [sic] permissible under [DGCL] § 145(a), and therefore "authorized by law." Allowing indemnification for the expenses incurred by a director in pursuing his indemnification rights gives recognition to the reality that the corporation itself is responsible for putting the director through the process of litigation. Further, giving full effect to § 145 prevents a corporation from using its "deep pockets" to wear down a former director, with a valid claim to indemnification, through expensive litigation. Finally, corporations will not be unduly punished by this result. They remain free to tailor their indemnification bylaws to exclude "fees on fees," if that is a desirable goal.

809 A.2d at 561.  The court concluded "without an award of attorneys' fees for the indemnification suit itself, indemnification would be incomplete."  *Id.*

Entitlement to fees on fees is equally applicable to claims for advancement as it is to claims for indemnification.  *See Fasciana v. Elec. Data Sys. Corp.*, 829 A.2d 178 (Del. Ch. 2003) (holding corporation required to pay "fees for fees" in connection with actions to enforce

---

[5] *See Yukos Capital S.A.R.L. v. Feldman*, 2016 WL 183360, at *3 (S.D.N.Y. Jan. 11, 2016) ("I reject . . . Feldman's . . . contention that his indemnification-advancement claim against YHIL is a compulsory counterclaim in this action and therefore must be brought here rather than in the Netherlands as the Deed requires. That precise argument has been rejected by each of the circuits to have considered it, as far as I am aware, including our own.") (citing *Publicis Commc'n v. True North Commc'ns Inc.*, 132 F.3d 633, 636 (7th Cir. 1997) and *Karl Koch Erecting Co. v. New York Convention Ctr. Dev. Corp.*, 838 F.2d 656, 659 (2d Cir. 1988)).

advancement obligations where applicable bylaw provides for advancement to the fullest extent permitted by Delaware law); *Weaver*, 2004 WL 243163, at *6  (finding that *Stifel* supports an award of fees for the successful prosecution of advancement claims).  The Delaware Chancery Court has held that under *Stifel*, fees on fees are "an inherent right of [a] party materially successful in asserting a claim for indemnification or advancement," unless the applicable bylaws "specifically exclude" them.  *Weaver*, 2004 WL 243163, at *7 ("Under *Stifel Financial*, if a corporation does not want to incur the obligation to pay 'fees on fees,' it must expressly preclude any such right.").  Neither the Rekor Bylaws nor the FFLLC Operating Agreement specifically excludes fees on fees.  Thus, Defendants are entitled to recover from Plaintiffs the fees incurred to the extent they have prevailed in their motion for advancement.  The amount of fees to be awarded is that which is "reasonable in relation to the results obtained." *Pontone*, 100 A.3d at 1058 (quoting *Schoon v. Troy Corp.*, 948 A.2d 1157, 1176 (Del. Ch. 2008)).

That Defendants' claims for indemnification and advancement were brought in this action as counterclaims, as opposed to by separate action in the Delaware Chancery Court, is irrelevant.  As Plaintiff's themselves point out, the Delaware General Assembly, which passed the DGCL, intended advancement provisions to be brought either in Delaware under the special Delaware procedures for advancement or in the forum where the defendant is being sued.  *See* Dkt. No. 102 at 2 ("Delaware courts have held that other courts may adjudicate fee advancement disputes under Delaware Law.") (citing *Merinoff v. Empire Merchs*., 2017 Del. Ch. LEXIS 23 (Del. Ch. Feb. 2, 2017)).  Defendants indisputably would be entitled to fees on fees if they had brought a claim for advancement in Delaware.  It would be inconsistent with the intent of Delaware corporate law and disserve the interests of judicial efficiency to deprive them of that remedy simply because they brought their claims in the more convenient forum.  Indeed, were

the law otherwise, the notion that Delaware intended to permit other courts to hear advancement proceedings would be illusory. No defendant would ever bring an advancement action in a court other than in Delaware and courts elsewhere would be deprived the opportunity to decide advancement issues that they are best suited to address.

## CONCLUSION

For the foregoing reasons, Defendants' motion for judgment on the pleadings is DENIED.

Counterclaim Defendants' motion to dismiss counterclaims four and six is DENIED as moot.

Defendants' claim for advancement pursuant to the Rekor Bylaws is GRANTED IN PART. Defendants are entitled, pursuant to the Rekor Bylaws and upon execution of an appropriate undertaking, to advancement of fees incurred in litigating counts two through five of the SAC. Defendant Satterfield is entitled to advancement, pursuant to the FF Operating Agreement and upon execution of an appropriate undertaking, to advancement of fees incurred in litigating count one of the SAC and the second, third, and fifth counterclaims. Defendants are entitled to recover from Plaintiff the fees incurred in bringing the motion for advancement, to the extent it has been successful.

The Clerk of Court is respectfully directed to close Dkt. Nos. 54, 55, 75, 78, 89, and 92.

SO ORDERED.

Dated: November 23, 2020
      New York, New York

                                LEWIS J. LIMAN
                          United States District Judge