UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_06/08/2022__
```

-----------------------------------------------------------------------X
                   :

REKOR SYSTEMS, INC.,              :

              Plaintiff,      :

                   :           19-cv-7767 (LJL)

        -v-             :

                   :     OPINION AND ORDER

SUZANNE LOUGHLIN, et al,     :

                   :

            Defendants.     :

                   :
-----------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Plaintiff Rekor Systems, Inc. ("Plaintiff" or "Rekor") moves, pursuant to Federal Rule of Civil Procedure 37(c), for an order striking the expert reports of Lawrence R. Chodor ("Chodor") and Michael H. Seid ("Seid"). Dkt. No. 250. For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

### I.    Procedural History

      The complaint was filed on August 19, 2019, Dkt. No. 1; an amended complaint was filed on October 9, 2019, Dkt. No. 19; and the second amended complaint was filed on January 30, 2020, Dkt. No. 64. Rekor alleges that it was the victim of a fraud committed by defendants Suzanne Loughlin ("Loughlin"), Harry Rhulen ("Rhulen"), and James Satterfield ("Satterfield") (collectively "Defendants") in connection with the sale of Defendants' membership interests in two businesses—Firestorm Solutions LLC ("FSLLC") and Firestorm Franchising LLC ("FFLLC," and together with FSLLC, "Firestorm")—to Rekor. Plaintiff also brings claims against Defendants for breach of fiduciary duty, violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030, *et seq.*, conversion, and trespass to chattels based on the

allegations that that Defendants deleted Rekor emails upon resigning as officers from Rekor and/or Firestorm in December 2018.  Firestorm was a business specializing in crisis-management and emergency-response consulting that was operating (or held out by Defendants as operating) on a franchise business model.  *Id.* ¶ 4.  Rekor, and more precisely its predecessor KeyStone, agreed to purchase the membership interests in it in exchange for the payment of cash, common stock, promissory notes, and warrants granting Defendants the right to purchase additional Rekor common stock.  *Id.* ¶¶ 2, 5.

Plaintiff alleges that in the months before it agreed to purchase Firestorm, Defendants made material misrepresentations and omissions regarding the initial franchise fees and minimum continuing monthly royalty payments Firestorm's franchisees had agreed to pay and fraudulently failed to tell Plaintiff that Firestorm had waived payment of the initial franchise fee for the majority of Firestorm franchisees and had waived the monthly royalty for many of the franchisees.  The agreements to waive fees were memorialized in side letters ("Side Letters"), which were not produced to Plaintiff and of which Plaintiff was never informed before execution of the Purchase Agreement, despite Plaintiff requesting, *inter alia*, copies of all material contracts of Firestorm, including all franchise agreements.  *Id.* ¶¶ 63, 65, 69.  Plaintiff also alleges that in the months before it agreed to purchase Firestorm, Defendants—and, "particularly Defendant Rhulen"—repeatedly represented to Plaintiff that Firestorm would imminently be executing a major deal with Firestorm's then-current client Beazley Insurance Company ("Beazley") that would create millions of dollars of recurring revenue for Firestorm, but which was ultimately never realized.  *Id.* ¶¶ 35, 93.  Finally, Plaintiff alleges that Defendants violated the CFAA and committed common law torts when, shortly before resigning from Rekor and/or Firestorm in December 2018, Defendants failed to return corporate records and deleted a large

quantity of their corporate emails, including Firestorm emails from before the Firestorm acquisition in January 2016, without permission and in violation of the company code of conduct. *Id.* ¶¶ 172–201. Plaintiff seeks rescission of the purchase and damages, in the alternative, as relief. *Id.* ¶¶ 10–11.

Discovery in this case has been extended on numerous occasions. On November 13, 2020, the Court entered a Case Management Plan and Scheduling Order that provided that "[a]ll expert discovery, including disclosures, reports, production of underlying documents, and depositions shall be completed by August 20, 2021," that all discovery was to be completed by that same date, and that a post-discovery status conference was to be held on September 8, 2021. Dkt. No. 101 ¶¶ 8, 9, 11. By Order of June 21, 2021, the Court extended the deadline for expert discovery to October 15, 2021, indicating that no further extension of discovery would be granted absent good cause. Dkt. No. 135. On July 23, 2021, the Court extended the discovery schedule yet again, providing that all discovery deadlines would be extended by forty-five days and scheduling a post-discovery conference for December 13, 2021. Dkt. No. 153. The Revised Case Management Plan and Scheduling Order was formally entered on July 27, 2021 and stated that all expert discovery was to be completed by November 29, 2021 (the same day as the completion of all discovery) and that the post-discovery status conference would be held on December 13, 2021. Dkt. No. 156.

On October 27, 2021, the parties requested the Court extend the date for the completion of depositions from November 12, 2021 to January 31, 2022, Dkt. No. 171; the Court granted that request and rescheduled the post-discovery status conference to February 28, 2022, Dkt. No. 172. The Revised Case Management Plan and Scheduling Order entered on November 17, 2021, provided that all expert discovery would be completed by February 28, 2022—the same date as

the post-discovery status conference.  Dkt. No. 174.  On January 20, 2022, the parties requested that the Court extend the time to complete fact depositions from January 31, 2022 to February 18, 2022 and extend all other case deadlines by three weeks, including by extending the last day to complete expert discovery to March 21, 2022; the letter mentioned the need to schedule the depositions of certain non-party witnesses as well as one party witness, which could not be scheduled until early February 2022.  Dkt. No. 184.  The Court granted that request and adjourned the post-discovery status conference to April 5, 2022.  Dkt. No. 185.

On March 8, 2022, counsel for Defendants wrote the Court requesting another extension of the discovery deadlines in light of one of the lawyer's health issues and the other lawyer's schedule.  Dkt. No. 211.  The letter requested that all expert discovery be concluded by April 8, 2022 and that the post-discovery status conference be rescheduled to April 12, 2022.  *Id.* at 2. Plaintiff agreed to the proposed changes subject to the Court's approval.  *Id.* at 1.  The letter from Defendants' counsel was quite specific in terms of what expert discovery remained to be conducted.  *Id.* at 2.  After noting that Defendants had yet to receive the reports of Plaintiff's two expert witnesses, Defendants stated that they would need to depose Plaintiff's two experts and proposed that they be deposed during the week of April 4, 2022.  *Id.*  Defendants' counsel did not mention that they intended to call experts or that they would need an extension of time for expert discovery.  *Id.*  That same day, the Court granted the requested extension, noting that expert discovery and all discovery shall be concluded by April 8, 2022 and rescheduling the post-discovery status conference to April 12, 2022.  Dkt. No. 213.

Plaintiff served two expert reports on March 24 and 25, 2022: an expert report on damages and a forensic accountant's report that Firestorm's disclosures were materially misleading.  Dkt. No. 251, Exs. A–D.

On April 8, 2022, Defendants' counsel requested yet another extension of time to complete discovery—this time solely to permit Defendants to depose witness Morris DeFeo ("DeFeo") on April 18 or 19, 2022.  Dkt. No. 228.  Defendants' counsel requested the extension on the basis of a medical episode that one of Defendants' lawyers suffered on the morning of April 1, 2022 when the deposition was to take place and on the basis of the schedules of Defendants' counsel and DeFeo.  *Id.*  The letter-motion stated: "This is the final deposition in this case."  *Id.* at 1.  Defendants made no mention of the need to adjust the schedule to conduct discovery of Plaintiff's experts, or that the Defendants would serve expert reports.  After further correspondence regarding DeFeo's schedule and the proposal by DeFeo's counsel that the deposition take place on April 27, 2022, Dkt. Nos. 229, 230, the Court ordered that DeFeo be deposed on April 27, 2022 or any other earlier date mutually agreeable to the parties, DeFeo, and his counsel, Dkt. No. 231.[1]

The Court finally held the post-discovery status conference on April 12, 2022.  By order dated April 12, 2022, the Court scheduled trial in this case to begin on October 17, 2022, with the final pretrial conference to be held on October 6, 2022.  Dkt. No. 234.  At the conference, Defendants' counsel announced for the first time that they intended to produce rebuttal expert reports.  Dkt. No. 248 at 5–7.  Plaintiff's counsel objected that the reports would be out of time as discovery had already closed.  *Id.* at 6–7.  After expressing its initial views that its orders were "quite clear" that expert discovery was to be concluded by April 8, 2022, the Court ruled that,

---

[1] Defendants' counsel represented that one other deposition, that of James Squire, was to take place on April 14, 2022.  Dkt. No. 248 at 5.  DeFeo's deposition still has yet to take place due to a medical situation requiring DeFeo to undergo surgery.  Dkt. Nos. 237–238.  The Court has ordered his deposition to be completed by June 13, 2022.  Dkt. No. 258.  That date will not be adjourned.

while it would not preclude Defendants from serving rebuttal expert reports, it would permit

Plaintiff to move to strike the expert reports.  *Id.* at 7.

## II.     The Expert Reports

Plaintiff served two expert reports on March 24 and 25, 2022: an expert report on

damages and a forensic accountant's report that Firestorm's disclosures were materially

misleading.  Dkt. No. 251, Exs. A–D.

Donald M. May ("May") in a report (the "May Report") calculates the alleged damages

suffered by Plaintiff as a result of its investment in Firestorm, based on the difference between

the value of the consideration paid for Firestorm by Plaintiff and the value of Firestorm at the

time of the acquisition plus the investments made by Plaintiff to support Firestorm until the

eventual discontinuation of its business in 2019.  Dkt. No. 251, Ex. C.  May calculates that, as of

September 2019, the damages suffered were $3,397,585, and, with prejudgment interest, would

be $4,162,042 as of the date of the report.  *Id.* at 13.  May previously provided a report (the

"Status Quo Report") that rescission was still possible because Firestorm's principal assets were

intellectual property that would continue to have value as of any future rescission date.  *Id.* at 3.

May's analysis is based on Plaintiff's contemporaneous acquisition analysis and financial

statements, which May accepts and opines is consistent with Generally Accepted Accounting

Principles and which allocates a portion of Firestorm's value to its intellectual property and a

portion to its net tangible assets.  *Id.* at 4–8.  Based on that allocation, May derives a value for

Firestorm as of the date of the acquisition, which he then subtracts from the value of the

consideration paid to Defendants and the additional investments Plaintiff made until Firestorm

was discontinued and the salaries paid to Defendants, to calculate total damages.  *Id.* at 13.

Martin S. Wilczynski ("Wilczynski") offers a report ("Wilczynski Report") as an expert

in forensic accounting, regulatory, financial reporting and disclosure, and auditing matters.  Dkt.

No. 251, Ex. D at 2.  The Wilczynski Report expresses four opinions.  First, the Franchise Agreement between FFLLC and its franchisees is an integral and material contract for purposes of the financial reporting and disclosures made within FFLLC's financial statements.  A decision by Firestorm to waive the fees or royalties that it otherwise is entitled to could reasonably be expected to have a materially adverse effect on the amount of revenue reported in Firestorm's financial statements.  *Id.* at 14–15.  Second, the initial franchise fee revenue reported by FFLLC is material to the total revenue recognized by FFLLC during the period from 2009 (inception) through December 31, 2017.  *Id.* at 15.  Based on Wilczynski's analysis, the initial franchisee fee FFLLC received from new franchisees constituted 54% of FFLLC's total revenues earned for the period from inception through 2014, which Wilczynski opines was clearly material from a financial accounting perspective.  *Id.* at 16.  However, for the period beginning in early January 2015, when FFLLC waived initial franchise fees for four of five new franchisees, initial franchise fees amounted to only 6% of FFLLC's total revenue.  *Id.*  Third, failure to adequately disclose monthly minimum royalties, initial franchise fees and the de facto January 2015 shift in business strategy effectively waiving these sources of revenue caused FFLLC's Franchise Disclosure Documents ("FDDs") and financial statements to be deficient and misleading.  *Id.* at 17.  Wilczynski opines that both the FDDs and Firestorm's audited financial statements were deficient and misleading because they stated the monthly minimum royalties to which FFLLC was entitled under the Franchise Agreements without revealing that the requirement to pay those royalties had been waived.  *Id.* at 17–19.  He also opines that FFLLC's "collective disclosure . . . within the FDDs and audited financial statements" regarding initial franchise fees were deficient and misleading in part because the FDD stated a range of initial franchise fees that would be paid without disclosing that no franchisee paid any amount in 2016 and in part because the audited

financial statements did not disclose that in 2015 FFLLC waived payments for four of five franchisees. *Id.* at 19–21. Wilczynski further opines that the failure to disclose FFLLC's new policy of not collecting initial franchise fees violated disclosure rules for public registrants imposed by the United States Securities and Exchange Commission. *Id.* at 21. Fourth, Wilcynski opines that without additional investigative effort and supplemental factual information, FFLLC's disclosure deficiencies and omissions regarding the use of waivers would not have been apparent to a reviewer of FFLLC's available FDDs and financial statements in the period leading up to the Rekor acquisition of Firestorm. *Id.* at 22. Wilczynski opines that a reasonable review of the available FDD and financial statements in the periods leading up to the acquisition would not have provided any red flag indications to the reviewer that FFLLC had granted side agreement waivers to franchisees of the payments required by the franchise agreements. *Id.*

On at least two occasions, including once after the service of Plaintiff's expert reports, Defendants stated that they would not be calling experts. On February 24, 2022, Plaintiff's counsel emailed Defendants' counsel concerning the scheduling of expert disclosures and depositions, and Defendants' counsel responded: "we do not plan to call an expert." Dkt. No. 251 ¶ 2; *see also* Dkt. No. 251, Ex. E; Dkt. No. 262 ¶ 3 (declaration of Defendants' counsel confirming that Defendants would not call their own experts but stating that the conversation was solely in the context of initial reports). During a March 31, 2022 conference call, Defendants' counsel further stated that Defendants did not intend to call any experts or depose Plaintiff's experts because counsel intended to get the testimony he needed from Plaintiff's experts on the stand at trial. Dkt. No. 251 ¶ 4. That same day, Defendants' counsel confirmed by email that they were not going to depose Plaintiff's experts. Dkt. No. 251, Ex. L. At the post-discovery

status conference with the Court, Defendants for the first time indicated that they intended to call experts.  Dkt. No. 251 ¶ 6; *see also* Dkt. No. 248 at 5.

Defendants served two purported rebuttal expert reports on Plaintiff on April 22, 2022. The expert report of Lawrence R. Chodor ("Chodor Report") purports to respond to the May Report.  Dkt. No. 251, Ex. F.  The Chodor Report critiques the May Report on a number of different grounds including that May failed to consider all of the value that Plaintiff acquired in the acquisition of Firestorm, including the value of a potential deal with Beazley and the value of managerial talent; that he improperly calculated the transaction consideration by including securities as to which Plaintiff was not seeking relief; that he should have used a different value for the intellectual property Plaintiff was acquiring; that his analysis improperly excludes the value of services Loughlin and Rhulen provided pursuant to their consulting agreements; and that his analysis is inconsistent with that reflected in his Status Quo Report.  *Id.*  Chodor concludes that Plaintiff suffered no damages.  *Id.*

Defendants also served the expert report of Michael H. Seid ("Seid Report").  Dkt. No. 251, Ex. G.  Seid is an expert on "all aspects of franchising, including but not limited to, the relationship between franchisors, franchisees, the standards, practices, duties and responsibilities customarily observed in the franchisor/franchisee relationships and mergers and acquisitions in franchising."  *Id.* at 4.  His opinion addresses "the franchisee business model," "the issues raised in this mater from the perspective of generally accepted franchising custom and practices," "the standards, customs, practices, duties, responsibilities and standards of care customarily observed in merger and acquisition of a franchise system," and "how the terms contained in the Firestorm Franchise Disclosure Document ('FDD') and Franchise Agreement ('FA') compare to generally accepted standards and practices found in franchising."  *Id.* at 5.  His opinion does not address

financial accounting.  The Seid Report addresses the items of disclosure that the Federal Trade

Commission ("FTC") require to be included in FDDs; that the terms provided in franchise

agreements can be modified by the franchisor for any reason and the franchisor need not disclose

that the terms of the franchise agreements are negotiable and need only disclose a range of initial

franchise fees charged; that the information necessary and due diligence required in the

acquisition of a franchise system is significantly different than required for a prospective

franchisee to invest in a franchise, and—at great length—the opinion that Plaintiff "should have

engaged in a reasonable and professionally supported due diligence."  *Id.* at 9–10, 19.  Seid

opines that there were no deficiencies or omissions related to negotiated changes of the initial

franchise fee or the minimum royalty in the FDDs based on the requirements in the FTC

regulations and argues that, to the extent Wilczynski opines that there were deficiencies, "his

opinions are contrary to the disclosure requirements as established by the FTC."  *Id.* at 13.  The

thrust of the Seid Report is that FDDs "are designed to provide prescribed information to a

prospective franchisee considering the purchase of a franchise" and are "not designed to provide

material information to . . . a prospective buyer of a franchise system"; that "[t]he information

necessary and the due diligence required in the acquisition of a franchise system is significantly

different than required for a prospective franchisee"; and that Plaintiff's FDDs were not

misleading or improper according to FTC standards.  *Id.* at 10.  Seid also opines on the due

diligence required in the acquisition of a franchise system and whether Plaintiff's due diligence

was reasonable or reckless.  *Id.* at 19–25.

## DISCUSSION

Plaintiff argues that the reports should be excluded for three reasons: (1) they were served

after the Court-ordered deadline to complete discovery and that court order applies to all expert

discovery including rebuttal reports; (2) even if the court order permitted an additional thirty

days for the service of rebuttal expert reports, neither the Seid Report nor the Chodor Report is a proper rebuttal report in that neither contradicts or rebuts Plaintiff's expert reports and both contain new arguments that Defendants should have disclosed in a primary report; and (3) the service of the reports violates Defendants' express representation that they were not calling expert witnesses.  Dkt. No. 252 at 1.  Defendants respond that the reports were timely under Rule 26(a)(2)(D)(ii); that they are proper expert reports; that the conversations with Plaintiff's counsel were all in the context of initial reports; and that the remedy of striking them is not appropriate under the *Softel* factors including because Plaintiff disclosed its experts and served its expert reports within (and not outside) the thirty days prior to the expiration of expert discovery.  Dkt. No. 261 at 1.

The Court first considers whether the deadline in the case management plans and scheduling orders of the Court applied to expert reports.  It then turns to the question of whether the reports of Seid and Chodor should be excluded.

## I.     The Expert Reports Are Untimely[2]

Federal Rule of Civil Procedure 26(a)(2)(D) requires a party to disclose the identity of a witness it intends to call as an expert and, in the case of a witness who is retained or specifically employed to provide expert testimony in the case, "at the time and in the sequence that the court orders."  Fed. R. Civ. P. 26(a)(2)(D).

---

[2] Plaintiff appears to argue that irrespective of whether the expert reports were timely, they should be excluded on the independent ground that Defendants "l[ied] about their intent" to file expert reports. Dkt. No. 252 at 11.  The principal case upon which Plaintiff relies, *Potter v. Phillips*, 2004 WL 3250122 (E.D.N.Y. Mar. 28, 2004), does not support this argument.  In *Potter*, the court excluded the defendants' expert testimony only after finding that it was served after the period allowed for expert discovery and considered defendants' intent only with respect to remedy.  The case thus does not support the contention that the Court may exclude the reports solely because they violated Defendants' counsel's prior express representation.  Because the Court here also concludes that Defendants' expert reports were untimely, it need not consider whether "lying about their intent" would independently serve as grounds for exclusion.

The numerous case management plans and scheduling orders here were clear and unambiguous:  "All expert discovery, including disclosures, reports, production of underlying documents, and depositions shall be completed by [DATE]."  Dkt. Nos. 101, 156, 174.  Those deadlines applied to the service of all experts reports and to discovery with respect to those reports, regardless whether they were initial reports or rebuttal reports.  The orders could not have been understood otherwise.  Each of the orders set the date for the close of expert discovery as the close for all discovery and scheduled a post-discovery status conference for shortly after the date for the close of expert discovery and all fact discovery.  Defendants could not reasonably have believed that the orders would have permitted them to avoid any discovery of a rebuttal witness by waiting until after the end of expert discovery to serve a rebuttal expert report.  The word "all" meant all.  Defendants' counsel could not reasonably have believed that when the Court stated "all expert discovery" and "all discovery" it meant "all" discovery except for that discovery prompted by the service of a rebuttal report.

Defendants argue that the reference to "all expert discovery" should be disregarded or construed not to apply to rebuttal reports because of the language of Rule 26(a)(2)(D)(ii) providing that rebuttal reports can be served "within 30 days of after the other party's disclosure."  Fed. R. Civ. P. 26(a)(2)(D)(ii).  But that argument omits the prefatory language which refers to the rule being in place "[a]bsent a stipulation or a court order."  Fed. R. Civ. P. 26(a)(2)(D).  Thus, where there is a stipulation or a court order, that stipulation or court order governs.  The parties must comply with the terms of the court order notwithstanding what otherwise might be permitted under Rule 26(a)(2)(D)((ii).  It is only "absent" a court order or stipulation with respect to discovery deadlines, that the default rules of Rule 26(a)(2)(D)(ii) apply.

The court in *Schablonentechnik v. MacDermid Graphic Arts, Inc.* reached substantially the same result on remarkably similar facts. 2005 WL 5974438, at *2–3 (N.D. Ga. June 21, 2005). The court there rejected an argument almost identical to that made by Defendants here: that because a scheduling order setting a deadline for the close of discovery did not make reference to a deadline for rebuttal reports it should be understood to leave in place the default portion of Rule 26(a)(2)(D)(ii) relating to rebuttal reports. The court stated: "The plain language of Rule [26(a)(2)(D)][3] states that any schedule for expert disclosures adopted by the Court controls their timing and sequence. Where such a Court-approved schedule is in place, the default deadlines provided by the rule do not apply. Rule [26(a)(2)(D)] makes this crystal clear by stating that the default schedule for expert disclosure controls only '[i]n the absence of other direction from the court or stipulation by the parties.'" *Id.* at *2. Noting a division of authority on the proposition, the federal district court in Georgia found persuasive the reasoning of *International Business Machines Corp. v. Fasco Industries*, 1995 WL 115421 (N.D. Cal. 1995), that "[t]he scheduling order does not have to account for every deadline set forth in [the rule]. When the court crafted its own schedule for expert disclosures, the mechanism set forth in Rule 26 was nullified." *Schablonentechnik*, 2005 WL 5974438, at *3 (quoting *International Business Machines*, 1995 WL 115421, at *2); *see also McCoy v. Kazi*, 2010 WL 11465179, at *6 (C.D. Cal. Aug. 27, 2010) (same); *Akeva L.L.C. v. Mizuno Corp.*, 212 F.R.D. 306 (M.D.N.C. 2002) (same).[4]

---

[3] The court in *Schablonentechnik* cited to Rule 26(a)(2)(C); the rule was renumbered to be Rule 26(a)(2)(D) as part of the 2010 amendments to Rule 26 but the language remained largely unchanged. The Court refers to the current numbering of the rule for ease of reference.

[4] The cases cited by Defendants involve the distinct and different question whether, where a Rule 16 order expressly sets a deadline for the service of initial reports but not a deadline for the service of rebuttal reports, the order should be read to preclude the service of any rebuttal reports at all even if they are served within the time period permitted by Rule 26(b)(2)(D)(ii); these cases

Moreover, even if the case management plan and the Court's orders permitted the service of rebuttal expert reports after the close of all expert discovery, "it is at best highly uncertain that [Seid] can even be classified as [a] 'rebuttal' expert[]." *Schablonentechnik*, 2005 WL 5974438, at *3. The Court thus concludes the Seid Report is untimely for failure to meet the deadline applicable to initial expert reports. A report is a rebuttal report if it is "intended solely to contradict or rebut evidence on the same subject matter" of the other party's expert report. Fed. R. Civ. P. 26(b)(2)(D)(ii). The term "same subject matter" is not narrowly construed. *See In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis With Kinectiv Tech. & Versys Femoral Head Prod. Liab. Litig.*, 2021 WL 1405185, at *2 (S.D.N.Y. Apr. 14, 2021); *see also Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 44 (S.D.N.Y. 2016). "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the

---

do not involve the question presented here whether when a Rule 16 order provides a *cutoff* for *all* expert discovery, that order should nonetheless be read to provide an exception for expert discovery that is rebuttal. In *S.E.C. v. Badian*, 2009 WL 5178537 (S.D.N.Y. Dec. 23, 2009), for example, the court held that an order that set a deadline for plaintiff's expert reports and then a later deadline for defendant's expert reports but was silent with respect to rebuttal reports should be read to permit the plaintiff to submit rebuttal reports under the time frame set forth in Rule 26(b)(2)(D)(ii) and within the general time period for expert discovery when it had not submitted any initial reports at all. *See also Paramount Media Group, Inc. v. Village of Bellwood*, 2015 WL 5307483 (N.D. Ill. Sep. 10, 2015) (scheduling order set deadline for the service of initial reports but not for rebuttal reports); *McAtee v. Buca Restaurants, Inc.*, 2011 WL 4861867 (S.D. Ind. Oct. 13, 2011) (order set deadline for service of initial reports); *Mayou v. Ferguson*, 544 F. Supp. 2d 899, 901 (D.S.D. Mar. 31, 2008) (stating that "[t]he parties met early on in the case and agreed that plaintiff would disclose his experts by February 1, 2007, and defendants would disclose their experts by May 15, 2007" and that "[n]othing was mentioned about possible rebuttal experts" and rejecting argument that "where the scheduling order does not provide for rebuttal experts or the time frame for disclosure, the plaintiff may not rely on Rule 26" to serve rebuttal reports); *Aircraft Gear Corp. v. Marsh*, 2004 WL 1899982 at *2 (N.D. Ill. Aug. 12, 2004) (case management order set deadline for plaintiff's initial expert reports and defendant initial expert reports without setting deadline for rebuttal reports); *Lee-bolton v. Koppers Inc.*, 2015 WL 11110548, at *2 (N.D. Fla. Sept. 21, 2015) ("The prevailing view among district courts in this circuit and throughout the country is that Rule 26(a)(2)(D)(ii) applies when the court has not ordered any deadlines for the disclosure of rebuttal expert witnesses."), *on reconsideration*, 2015 WL 6394504 (N.D. Fla. Oct. 22, 2015).

14

adverse party." *Scott*, 315 F.R.D. at 44 (quoting *Sci. Components Corp. v. Sirenza Microdevices, Inc.*, 2008 WL 4911440, at *2 (E.D.N.Y. Nov. 13, 2008)).  At the same time, however, "a rebuttal expert report is not the proper place for presenting new arguments."  *In re Zimmer M/L Taper Hip Prosthesis*, 2021 WL 1405185, at *3 (internal quotation marks omitted) (quoting *Ebbert v. Nassau Cnty*, 2008 WL 4443238, at *13 (E.D.N.Y. Sept. 26, 2008)).  "Nor is a rebuttal report an opportunity to correct oversights in the party's case in chief."  *Id.*

The Seid Report is not addressed to the same subject matter as the Wilczynski Report and, with limited possible exceptions,[5] it does not repel, counteract, or disprove any of the opinions expressed in the Wilczynski Report.  The Wilczynski Report is addressed to financial accounting and to whether the face of the FDDs and Firestorm's financial disclosures would constitute red flags alerting a reader considering the purchase of the business to the possible existence of the Side Agreements or the waivers to the franchise agreements.  It is not addressed to compliance with federal or state regulatory requirements for FDDs or to the standard of a reasonable due diligence investigation in the context of a M&A transaction.  Wilczynski is not qualified to render opinions as to whether the FDDs comply with FTC or state regulatory requirements for franchise disclosures to potential franchisees, and he does not purport to be an expert on M&A due diligence.  The Court will not permit him to testify on those subjects.  In addition, whether the FDDs complied with FTC or state regulatory requirements is irrelevant; it is not material to the question raised by Plaintiff's complaint whether Defendants defrauded Plaintiff.

---

[5] The limited possible exceptions are the opinions of Wilczynski that the FDDs were improper. Plaintiff does not argue that Wilczynski should be permitted to testify about the compliance of the FDDs with franchise disclosure rules, and Wilczynski is not competent to and will not be permitted to opine on the propriety of the FDDs from that perspective.

Although the Seid Report refers to the Wilczynski Report, the Seid Report does not rebut or contradict Wilczynski's opinions.  It does not address at all the questions of financial reporting or materiality; Seid does not purport to be an expert on financial accounting or on materiality. Seid also does not contradict or repel or rebut Wilczynski's opinion that the language of the FDDs would not alert a reader to the existence of the Side Agreements or the fact of the waivers. His report is directed at other things entirely—whether notwithstanding that they did not disclose the waivers or Firestorm's change in business, the FDDs complied with federal and state regulatory requirements and whether Plaintiff conducted adequate due diligence according to industry standards.  These are issues not addressed in the Wilczynski Report, and nothing that Seid says is inconsistent with what Wilczynski says.  Defendants can cross-examine Wilczynski on the limits of his opinion—that he is not opining about FTC requirements or the standard of care for due diligence.  But they cannot use the fact that Wilczynski did not address those subjects as an excuse to introduce into the case entirely new opinions on a new subject on the guise that they are rebuttal.[6]

---

[6] Plaintiff makes a half-hearted argument that the Chodor Report does not qualify as a rebuttal expert report under Rule 26 because Chodor relies on two new declarations by Defendants Loughlin and Rhulen regarding the dollar value of the services each provided to Rekor pursuant to his or her respective consulting agreement.  Dkt. No. 252 at 10–11.  The Court rejects that argument.  Although that valuation constitutes an important part of Chodor's opinion that Rekor suffered no damages, it plays a role only with respect to certain of his opinions and not all of them.  In addition to Chodor's calculation of the value of the services rendered by Loughlin and Rhulen, Chodor critiques May's damages opinion on the grounds that it improperly values the intellectual property acquired by Plaintiff, improperly excludes value that Rekor acquired in the form of the potential of a Beazley transaction and in managerial talent, improperly includes in the value of the consideration provided warrants and options that Plaintiff has failed to satisfy and/or that it claims Plaintiff has disclaimed as a component of damages, and is inconsistent with the Status Quo Report.  Those opinions appear to be independent of Chodor's reliance on the two declarations.  Moreover, even as to the calculation of the value rendered pursuant to the consulting agreements, Chodor's report appears to be on the same subject as the May Report— the calculation of Plaintiff's damages.  The Court considers the Chodor Report's reliance on the two new declarations only in the second part of this Opinion where the Court analyzes

## II.        Whether the Expert Reports Should Be Excluded

The question then arises what the sanction should be for the late disclosure of the expert reports.  Rule 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see also* Fed. R. Civ. P. 26(a)(1) advisory committee's note to 2000 amendment ("The obligation to disclose information the party may use connects directly to the exclusion sanction of Rule 37(c)(1).").  "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request.  Failure to comply with the mandate of the Rule is harmless when there is no prejudice to the party entitled to the disclosure."  *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (internal quotation marks and citations omitted).

The Court has discretion to exclude a witness, but that discretion is not unbridled.  In deciding whether to exclude a witness from testifying for violation of Rule 26, the court considers the *Softel* factors: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."  *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (alterations in original) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997)).  "Preclusion is considered 'a drastic remedy' that is generally disfavored within the District."  *Rosado v. Soriano*, 2021 WL 4192863, at *1

---

whether—notwithstanding that the report is late—it should be permitted.

(S.D.N.Y. Aug. 6, 2021) (quoting *Rivera v. United Parcel Serv.*, 325 F.R.D. 542, 548 (S.D.N.Y. 2018)).  "Precluding testimony of an expert, even when there has not been strict compliance with Rule 26, 'may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants.'"  *Rmed Intern., Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL 31780188, at *3 (S.D.N.Y. 2002) (quoting *In re Kreta Shipping, S.A.*, 181 F.R.D. 273, 277 (S.D.N.Y. 1998)).  "Before the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses."  *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988). In keeping with the *Outley* caution, the Court separately examines the actual difficulties with respect to each of Seid and Chodor.

> **A.      The Seid Report Is Excluded**

Defendants' failure to timely serve the Seid Report is not substantially justified and would not be harmless.  Its exclusion is required under the *Softel* factors.  There is no substantial justification for the failure to timely serve either of Defendants' reports.  Defendants complain that they did not learn the identity of Plaintiff's experts and the content of their opinions until their expert reports were served on March 24 and 25, 2022, respectively.  Defendants state that they raised the topic of expert discovery on February 24, 2022,[7] but learned only that Plaintiff intended to call an expert and not the identity of the expert or the topic of the expert report; later, Defendants learned that Plaintiff intended to call a second expert but again not the identity of the expert or the topic of the expert report.  That Defendants failure to learn the identity of Plaintiff's experts or the substance of their opinions until late March does not excuse either the failure to serve expert reports earlier or, more importantly, the failure to timely request a change to the

---

[7] The parties dispute who raised the topic of expert reports first.  The difference is immaterial to the resolution of this dispute.

Case Management Plan and Scheduling Order.  First, the short time within which Defendants would have had under the existing plan to serve a rebuttal report would have been a problem of Defendants' own manufacture.  On February 24, Plaintiff told Defendants that they would disclose the name of the expert the following day as well as when his report would be ready and a date for deposition; Defendants did not complain.  Dkt. No. 251, Ex. E.  Defendants also did not complain when Plaintiff on February 25, 2022 stated that it would disclose the expert report in mid-March or when on February 28, 2022 it stated that there would be two experts.  *Id.*, Ex. J. Defendants never complained about the timing of the production of Plaintiff's expert reports, never asked for Plaintiff to disclose the identities of Plaintiff's experts or the topics of their reports in advance of the production of the expert reports, and at no point ever indicated that they intended to retain either a primary or a rebuttal expert or produce any such expert reports.  Dkt. No. 266 ¶¶ 2–3, 6.  Plaintiff never attempted to impede Defendants from taking the depositions of Plaintiff's experts, sent multiple inquiries to Defendants asking them to provide dates to depose Plaintiff's experts, consented to Plaintiff's request for an extension of expert discovery to take the depositions of Plaintiff's experts, and thereafter provided proposed dates when each expert was available.  *Id.* ¶¶ 4–5.  Defendants made their own election not to take the depositions of Plaintiff's experts, not to ask for further time for expert discovery, and not to timely produce expert reports.  In fact, within the time permitted under the Case Management Plan, Defendants at least twice stated that they did not intend to call an expert.  Dkt. No. 251 ¶¶ 2, 4; *id.*, Ex. L.  It was incumbent on Defendants—and not on Plaintiff and certainly not on the Court—to anticipate that they might want to reserve time for a rebuttal report and to raise the issue if they had any concerns.

Defendants certainly had occasion to raise with the Court a concern that they wanted additional time for rebuttal reports; they wrote to the Court on January 20, 2022 and on March 8, 2022—the latter after the February 24, 2022 conversation—asking for extensions including of expert discovery.  But even knowing that they would receive two expert reports from Plaintiff and that the depositions of those experts would not take place until the week of April 4, 2022, Defendants asked only for an extension of expert discovery to April 8, 2022,  Dkt. No. 211, a request which the Court granted, Dkt. No. 213.  They thus cannot be heard to complain if the existing case management plan would not have given them sufficient time.  They did not ask for that time.

Second, and equally important, even after receiving Plaintiff's expert reports on March 24 and 25, 2022, Defendants still did not timely ask for an extension of the Case Management Plan and Scheduling Order.  Tellingly, Defendants' counsel wrote to the Court on April 8, 2022, asking for yet another extension for a single fact deposition.  Dkt. No. 228.  Defendants' counsel wrote, "This is the final deposition in this case," *id.*, and the Court relied on that representation. Indeed, it was not until the post-discovery status conference—a conference called for *after* the close of all discovery and scheduled for the purpose of discussing summary judgment motions and setting a trial date—and only in response to the Court's query whether all discovery was completed that Defendants made any mention of the expert reports.

Defendants also refer to "a health issue of counsel."  Dkt. No. 261 at 2.  But that too does not substantially justify Defendants' failure to meet the Court's deadlines or to timely ask for an extension of those deadlines.  The April 8, 2022 letter explicitly referred to the health issue of counsel but did not ask for an extension.  "Although the health problems of [Defendants' counsel] are unfortunate," more than one lawyer represents Defendants in this case and the

numerous letters from counsel "presented an opportunity to apprise the Court of counsel's circumstances and request an extension of the expert discovery deadline." *Regalado v. Ecolab Inc.*, 2016 WL 94139, at *3 (S.D.N.Y. Jan. 7, 2016). "No such request was made. . . . Absent any good faith effort to address its inability to comply with the scheduling order prior to filing an untimely expert disclosure, no substantial justification exists for the untimeliness." *Id.*

For similar reasons to those based upon which the Court does not consider the Seid Report to constitute proper rebuttal, admission of that report also cannot be harmless and would in fact be unfairly prejudicial. The Seid Report strays far afield from response to the opinions expressed in the Wilczynski Report. This is not a case in which the prejudice to Plaintiff could be cured by permitting a deposition to be taken of Seid. *Cf. In re Zimmer M/L Taper Hip Prosthesis*, 2021 WL 1405185, at *3 ("Prejudice can be cured by allowing the movant to challenge the expert's testimony through depositions and *Daubert* motions."). If the Seid Report were admitted, the Court would be required—out of fairness—to permit Plaintiff to reopen discovery, depose Seid, and proffer an entirely new witness of its own on a new subject matter after that expert too had time to consider industry standards for due diligence and regulatory standards for FDD disclosure.

As to the *Softel* factors, Defendants' late disclosure of the expert reports—at a post-discovery conference and after all discovery was to be completed and trial was to be scheduled, smacks of bad faith and gamesmanship. There is no good reason why Defendants could not have disclosed earlier the intention to retain either expert. Certain of Seid's opinions are not particularly relevant: as the Court has stated, it is not relevant whether the FDDs complied with FTC or state regulatory requirements. There will be no cognizable harm to Defendants from excluding those opinions. And while other opinions such as the standard for due diligence

during a M&A transaction might be relevant if Seid's testimony survived a *Daubert* challenge, it is precisely because it is relevant and new that Plaintiff would suffer unfair prejudice.  In any event, Defendants do not need an expert to make their points—they can elicit in cross-examination of Plaintiff's witnesses and in direct examination of their own witnesses the limits of Plaintiff's due diligence.  They can argue to the jury based on the jury's common sense that the diligence was not sufficient for a transaction of this size.  No doubt that presentation would be aided with the testimony of an expert—had notice of one been timely made.  However, as stated, Plaintiff would suffer substantial and unfair prejudice from having to prepare to meet the new testimony.

The remaining question relates to the possibility of a continuance.  The Second Circuit has warned district courts against slavish adherence to their own trial schedules and that case management must give way in appropriate cases to concerns of substantial justice.  But this is not a case where a short continuance would cure the prejudice to Plaintiff and where the long continuance that would be necessary if the Court were to admit the Seid Report would serve the interests of substantial justice.  The three-week trial in this case is scheduled to begin on October 17, 2022; the proposed joint final pretrial order is due by September 23, 2022.  Dkt. No. 234. The case was filed almost three years ago, and Defendants have already been granted numerous extensions.  At this point, Plaintiff is entitled to its day in court and to have the proofs presented on each side of the case.

### B.      The Chodor Report Is Not Excluded

The Court reaches a different conclusion with respect to the Chodor Report.  There is no substantial justification for the late service of that report or good explanation for the failure to provide notice of it within the time period permitted for expert discovery.  In addition, the late service of the report is not harmless—without more, Defendants have been deprived of the

opportunity to take Chodor's deposition.  A continuance also is not realistic and would not be in the interests of substantial justice.  However, a continuance is not necessary.  The subject of Chodor's testimony is important—damages is one of the critical issues at trial.  And the calculation of damages ordinarily is not readily conducive to fact witnesses.  Defendants would be prejudiced without an expert on damages to challenge Plaintiff's damages expert.  Moreover, the prejudice is readily addressed.  Plaintiff complains that Chodor's testimony is based, in part, on new declarations from Loughlin and Rhulen regarding the value of the services they performed pursuant to the consulting agreements.  But Defendants have consented to the continued deposition of those two defendants on the subject of their declarations, Dkt. No. 261 at 7, and the Court will permit discovery to be reopened for a deposition of those two fact witnesses, to last no longer than one hour each, and to be completed within thirty (30) days of the date of this Order.  Moreover, Loughlin and Rhulen will testify at trial and can be cross-examined on their testimony regarding the value of their services.  As to Chodor himself, the prejudice that Plaintiff has suffered of not being able to take his deposition within the time permitted for expert discovery, "is easily cured by allowed plaintiff to depose [Chodor] if they so desire" notwithstanding those time limits.  *Rmed Int'l*, 2002 WL 31780188, at *4.  Chodor shall be made available on a date convenient to Plaintiff within the next thirty (30) days.  Plaintiff may make a document request consistent with Rule 26(b)(4).

## CONCLUSION

The motion to strike Defendants' expert reports is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 250.

SO ORDERED.

Dated: June 8, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge