UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #:_____               │
│ DATE FILED: 08/05/2022               │
└─────────────────────────────────────┘
```

------------------------------------------------------------------X
REKOR SYSTEMS, INC.,                    :
                                        :
                        Plaintiff,      :
                                        :
                                        :          19-cv-7767 (LJL)
        -v-                             :
                                        :          OPINION AND ORDER
SUZANNE LOUGHLIN, et al.,               :
                                        :
                        Defendants.     :
                                        :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

Defendants Suzanne Loughlin ("Loughlin"), Harry Rhulen ("Rhulen"), and James

Satterfield ("Satterfield") (collectively "Defendants") and additional counterclaim plaintiff

CrisisRisk Strategies LLC ("CrisisRisk") move for an order: (1) permitting Defendants and

CrisisRisk to withdraw their jury demand in this action, pursuant to Federal Rule of Civil

Procedure 38(d); (2) striking the jury demand of plaintiff Rekor Systems, Inc. ("Rekor"  or

"Plaintiff") and additional counterclaim defendants Firestorm Solutions LLC ("FSLLC") and

Firestorm Franchising LLC ("FFLLC," and together with FSLLC, "Firestorm"), pursuant to

Federal Rule of Civil Procedure 39(a)(2); and (3) to the extent any claims remain to be tried to a

jury, bifurcating the trial to conduct the jury trial after the remaining claims are tried before the

Court, pursuant to Federal Rule of Civil Procedure 42(b).

For the following reasons, the motion is granted in part and denied in part.

## BACKGROUND

### I.      Procedural History

On August 19, 2019, Plaintiff sued Defendants, alleging that Defendants fraudulently

induced Plaintiff to purchase Firestorm through a Membership Interest Purchase Agreement

dated January 25, 2017 (the "Purchase Agreement").  Dkt. No. 1.  The complaint brought six claims: a claim for fraudulent concealment, two claims for fraudulent misrepresentation, and three claims for negligent misrepresentation.  *Id.*  The complaint did not include a jury demand. *Id.*

Before Defendants answered, Plaintiff filed an amended complaint on October 9, 2019. Dkt. No. 19.  The amended complaint replaced the six claims brought in the original complaint with one claim for fraudulent omission.  *Id.*  The amended complaint again did not include a jury demand.  *Id.*

On November 13, 2019, Defendants answered the amended complaint and, along with CrisisRisk, brought nineteen counterclaims against Plaintiff, Firestorm, and ten individual counterclaim defendants.  Dkt. No. 34.[1]  The answer and counterclaims contained a jury demand. *Id.* at 1.

On January 30, 2020, Plaintiff filed its second amended complaint ("SAC"), which is the operative complaint in this matter.  Dkt. No. 64.  The SAC brings five claims.  *Id.*  In addition to the claim for fraudulent omission (first claim), the SAC alleges that Defendants destroyed emails from their company email accounts and adds claims for breach of fiduciary duty (second claim), violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* (third claim), conversion (fourth claim), and trespass to chattels (fifth claim).[2]  *Id.*  Unlike the two prior complaints filed by Plaintiff, the SAC includes a jury demand, which states: "Pursuant to F.R.C.P. 38(b), Plaintiff demands a trial by jury on all issues so triable."  *Id.* at 41.

---

[1] Defendants' answer and counterclaims were filed on November 4, 2019, Dkt. No. 22, but were not properly docketed until November 13, 2019 due to a filing error.

[2] The SAC contains two claims titled "Fourth Cause of Action," Dkt. No. 64 at 37, 39, and the Court will refer to the second of these claims (the claim for trespass to chattels) as the fifth claim.

On February 28, 2020, Defendants answered the SAC and, along with CrisisRisk, brought twenty counterclaims against Plaintiff, Firestorm, and nine individual counterclaim defendants.[3]  Dkt. No. 71.  The twenty counterclaims included claims: (1) that Rekor breached its employment agreement with Rhulen; (2) that Rekor failed to honor Loughlin and Satterfield's warrants; (3) that Rekor repudiated its obligations with respect to Rhulen's warrants; (4) that Rekor breached its fiduciary duty to Defendants; (5) that Rekor repudiated its obligations under the promissory notes issued to Defendants; (6) that Rekor defamed Defendants; (7) for indemnification by FSLLC; (8) for declaratory judgment against FSLLC; (9) for specific performance against FSLLC; (10) for indemnification by FFLLC; (11) for declaratory judgment against FFLLC; (12) for specific performance against FFLLC; (13) for indemnification by Rekor; (14) for declaratory judgment against Rekor; (15) for specific performance against Rekor; (16) for indemnification under the Purchase Agreement; (17) for declaratory judgment under the Purchase Agreement; (18) for specific performance under the Purchase Agreement; (19) that FSLLC failed to pay CrisisRisk invoices for work performed by Loughlin and Satterfield; and (20) that Rekor failed to pay Satterfield for boxing certain documents.  *Id.*  Like before, the answer and counterclaims contained a jury demand.  *Id.* at 1.

On April 22, 2020, Plaintiff and Firestorm answered the counterclaims.  Dkt. No. 74. The answer to the counterclaims did not contain a jury demand.  *Id.*

Defendants and CrisisRisk moved for partial summary judgment on April 27, 2021, before the end of discovery, Dkt. No. 111, and, on March 14, 2022, the Court granted in part and denied in part the motion, Dkt. No. 214.  Plaintiff moved for partial summary judgment on April

---

[3] Defendants later voluntarily dismissed the counterclaims against the individual counterclaim defendants.  Dkt. No. 73.

29, 2022, Dkt. No. 243; the Court granted in part and denied in part Plaintiff's motion for partial summary judgment on July 29, 2022, Dkt. No. 318.

At this stage of the case, only some of Plaintiff's claims and some of Defendants' counterclaims remain.  Plaintiff's remaining claims include its claims for: fraudulent omission (first claim); breach of fiduciary duty as to Loughlin and Rhulen (second claim); conversion as to Loughlin and Rhulen (fourth claim); and trespass to chattels as to Loughlin and Rhulen (fifth claim).  Defendants' remaining counterclaims include their claims: that Rekor breached Rhulen's employment agreement (first counterclaim); that Rekor failed to honor Loughlin and Satterfield's warrants (second counterclaim); that Rekor repudiated its obligations with respect to Rhulen's warrants (third counterclaim); and that Rekor repudiated its obligations under the promissory notes issued to Defendants (fifth counterclaim).  Defendants' twelve indemnification counterclaims (seventh through eighteenth counterclaims) also remain in the case.  Finally, Defendants' counterclaim for Rekor's failure to pay Satterfield for boxing certain documents (twentieth counterclaim) remains in the case pending resolution under the doctrine of setoff.  *See* Dkt. No. 214 at 36.

Defendants brought the instant motion concerning the jury demand and bifurcation of trial on April 29, 2022—the same day Plaintiff moved for partial summary judgment.  Dkt. No. 239.  Plaintiff filed its opposition to the motion on May 13, 2022.  Dkt. No. 263.  Defendants replied on May 20, 2022.  Dkt. No. 270.

## II.    Jury Waiver in the Purchase Agreement

Pursuant to the Purchase Agreement dated January 25, 2017, Plaintiff purchased Firestorm from Defendants in exchange for cash payments, promissory notes, common stock, and warrants.  Dkt. No. 259-7.  The promissory notes and the warrants were included as exhibits to the Purchase Agreement.  *Id.*, Exs. D, E, F.  As a closing condition, the Purchase Agreement

also required that Plaintiff enter into employment agreements with Rhulen and Loughlin and that Firestorm enter into an employment agreement with Satterfield.  *Id.* § 6.2(i).  The three employment agreements were also attached to the Purchase Agreement as exhibits.  *Id.*, Exs. C-1, C-2, C-3.  The Purchase Agreement also contains an integration clause.  Section 11.9 ("Entire Agreement") provides that "[t]his Agreement and the agreements and documents referred to herein contain the entire agreement and understanding among the Parties with respect to the subject matter hereof and supersede all prior agreements and understandings, whether written or oral, relating to such subject matter in any way."  *Id.* § 11.9.  Section 11.12 ("Schedules, Exhibits and Annexes") provides that "[a]ll Schedules, Exhibits and Annexes attached hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein."  *Id.* § 11.12.

Section 11.15 ("Waiver of Jury Trial") of the Purchase Agreement provides in part that "[e]ach party hereto waives, to the fullest extent permitted by applicable Law, any right it may have to trial by jury in respect of any Proceeding arising out of this Agreement or the Transaction."  *Id.* § 11.15.  "Proceeding" is defined as "any action, suit, proceeding (including arbitration proceeding), investigation, claim, charge, complaint, audit, inquiry or other proceeding."  *Id.*, art. X.  "Agreement" refers to the Membership Interest Purchase Agreement, *id.*; *see also id.* at 1, and "Transaction" means "the transactions contemplated by this Agreement and the other Transaction Documents," *id.*, art. X; *see also id.* § 1.2.[4]  "Transaction Documents"

---

[4] Article X of the Purchase Agreement defines "Transaction" as having the meaning set forth in Section 1.2.  *Id.*, art. X.  Section 1.2 ("The Closing") provides in relevant part: "Unless this Agreement is earlier terminated pursuant to Article VII, the consummation of the transactions contemplated by this Agreement and the other Transaction Documents (collectively, the 'Transaction') will take place at the offices of Crowell & Moring LLP . . . on the third (3rd) Business Day following the satisfaction or waiver . . . of all conditions to the obligations of the Parties to consummate the Transaction (the 'Closing')."  *Id.* § 1.2.  Plaintiff argues that

"means, collectively, this Agreement and all other agreements, certificates and instruments contemplated by this Agreement." *Id.*, art. X.

The warrants are contained in Exhibits E and F to the Purchase Agreement. *Id.*, Exs. E, F. Section 14(g) of both warrants provides that "each of the registered holder and the company waives, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding (whether based on contract, tort or otherwise) arising out of or related to this warrant." *Id.*, Ex. E § 14(g) (all-capitalization omitted); *see also id.*, Ex. F § 14(g).

Unlike the warrants, the employment agreements and promissory notes attached to the Purchase Agreement do not include jury waiver provisions. *See id.*, Exs. C-1, C-2, C-3, D.

## DISCUSSION

Defendants argue that the jury waiver included in the Purchase Agreement applies to all of the claims and counterclaims remaining in the case that do not concern indemnification.[5] Dkt. No. 260 at 1–2. As for the twelve indemnification counterclaims, Defendants contend that these counterclaims are subject to summary adjudication by the Court after determination of the merits of the action. *Id.* at 2. To the extent these indemnification counterclaims are subject to trial, Defendants argue that the jury waiver applies to the three counterclaims under the Purchase Agreement and otherwise seek to withdraw the jury demand for the indemnification

---

"Transaction" means "*the consummation of* the transactions contemplated by this Agreement and the other Transaction Documents." Dkt. No. 263 at 10. However, the phrase "consummation of the Transaction" appears several times in the agreement, *see, e.g.*, Dkt. No. 259-7 §§ 2.3, 3.3(a), 3.3(b), 3.12(b), 4.2(a), 4.2(b), 5.2(b), 6.1(a), 11.1, and Plaintiff provides no justification for why the term "Transaction" itself should be interpreted to include "the consummation of" the transactions.

[5] Defendants do not argue that a jury waiver applies to the twentieth counterclaim related to Satterfield's payment for boxing documents, but they assert that no jury trial is needed because only the issue of setoff remains for that counterclaim.

counterclaims.  *Id.*  Defendants also seek bifurcation of trial if any claims or counterclaims are to be tried to a jury.  *Id.*

Plaintiff concedes that jury waivers apply to its fraud claim (first claim) and to the counterclaims related to the warrants (second and third counterclaims).  Dkt. No. 263 at 1. Plaintiff, however, argues that no jury waiver applies to the rest of the claims and counterclaims. *Id.* at 1–2.  Contrary to Defendants' position, Plaintiff argues that the indemnification counterclaims must be heard by a jury and that bifurcation of trial is not warranted here.  *Id.* at 2.

The Court first addresses a threshold procedural issue under Federal Rule of Civil Procedure 38(d) before turning to the question of the contractual jury waiver and bifurcation of trial.

## I.       Plaintiff Did Not Waive Its Right to a Jury for the Email-Related Claims Raised in the SAC Pursuant to Federal Rule of Civil Procedure 38(d)

Defendants argue that Plaintiff waived its right to a jury trial by not including a jury demand in its complaint or amended complaint and that inclusion of a jury demand in its SAC does not revive its right to a jury.  Dkt. No. 260 at 4.  Plaintiff responds that it has not waived its right to a jury trial on its email-related claims for breach of fiduciary duty (second claim), conversion (fourth claim), and trespass to chattels (fifth claim), which were included for the first time in the SAC.  Dkt. No. 263 at 4.

Federal Rule of Civil Procedure 38(d) provides that "[a] party waives a jury trial unless its demand is properly served and filed."  Fed. R. Civ. P. 38(d); *see also Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 356 (2d Cir. 2007) ("Failure to serve a demand constitutes a waiver of that right." (citing Fed. R. Civ. P. 38(d))).  "A litigant who has waived a jury may nonetheless demand one with respect to new issues raised by later pleadings, unless the new issues are simply 'artful rephrasings' of existing issues."  *Westchester Day Sch.*, 504 F.3d at 356

(citing *Rosen v. Dick*, 639 F.2d 82, 94 (2d Cir. 1980)); *see also Chen v. Hunan Manor Enter., Inc.*, 340 F.R.D. 85, 88 (S.D.N.Y. 2022) ("[I]t is well settled that an amendment does not revive a right previously waived to demand a jury trial on issues already framed by the original pleadings." (alteration in original) (quoting *Am. Home Prods. v. Johnson & Johnson*, 111 F.R.D. 448, 450 (S.D.N.Y. 1986))).  "In this context, an '"issue" means something more than the evidence offered and the legal theories pursued.'"  *Chen*, 340 F.R.D. at 88 (quoting *Rosen*, 639 F.2d at 94).  "A court evaluating whether a pleading raises a new issue should consider 'whether the amendment changes "the character of the suit," or the ultimate issue of decision.'"  *Id.* (quoting *Lastra v. Weil, Gotshal & Manges LLP*, 2005 WL 551996, at *2 (S.D.N.Y. Mar. 8, 2005)).  "At the very least . . . a 'new issue' does not exist unless there is a factual determination to be made by the jury that falls outside the matrix of fact already covered in the pleadings."  *Id.* (quoting *Virgin Air, Inc. v. Virgin Atl. Airways, Ltd.*, 144 F.R.D. 56, 58 (S.D.N.Y. 1992)).  But "[a]n amended complaint asserting new theories of recovery, based on the same facts as the original complaint, will not renew a [party's] right to a jury trial when that right was waived with respect to the original complaint."  *Westchester Day Sch.*, 504 F.3d at 356.

Plaintiff did not waive its right to a jury on its email-related claims, which were alleged for the first time in the SAC.  Though Plaintiff's complaint and amended complaint did not include a jury demand, neither the original complaint nor the amended complaint included allegations related to the email claims.  The SAC's allegations that Defendants destroyed company emails after they resigned their positions are not "simply 'artful rephrasings'" of the fraud allegations related to the Purchase Agreement raised in the prior two complaints, *id.*, and these new allegations raise "factual determination[s] to be made by the jury that fall[] outside the matrix of fact already covered in the pleadings," *Chen*, 340 F.R.D. at 88.  Accordingly, Plaintiff

did not waive its right to a jury on its email-related claims for breach of fiduciary duty (second

claim), conversion (fourth claim), and trespass to chattels (fifth claim).

## II.     Contractual Jury Waiver

Plaintiff concedes that it has contractually waived its right to a jury on its claim for

fraudulent omission (first claim) and on Defendants' counterclaims regarding the warrants

(second and third counterclaims).  But the parties otherwise dispute the interpretation and

coverage of the jury trial waiver.

The Seventh Amendment to the United States Constitution guarantees the right to a trial

by jury in civil actions, and, under Federal Rule of Civil Procedure 38, "[t]he right of trial by

jury as declared by the Seventh Amendment to the Constitution . . . is preserved to the parties

inviolate."  Fed. R. Civ. P. 38(a).  "It is elementary that the Seventh Amendment right to a jury is

fundamental and that its protection can only be relinquished knowingly and intentionally."

*National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 258 (2d Cir. 1977) (citing *Johnson v.

Zerbst*, 304 U.S. 458 (1938)).  However, "[t]he parties to a contract may, by prior written

agreement entered into knowingly and voluntarily, waive the right to a jury trial."  *Morgan

Guaranty Trust Co. v. Crane*, 36 F. Supp. 2d 602, 603 (S.D.N.Y. 1999) (citing *Herman Miller v.

Thom Rock Realty Co.*, 46 F.3d 183, 189 (2d Cir. 1977)).  "Contract provisions waiving the right

are narrowly construed, and the requirement of knowing, voluntary, intentional waiver is strictly

applied."  *Id.*  "[T]he party seeking to enforce the jury waiver clause bears the burden of showing

that the waiver was knowing and voluntary."  *Stephens Inc. v. Flexiti Fin. Inc.*, 2019 WL

2725627, at *8 (S.D.N.Y. July 1, 2019) (alteration in original) (quoting *Kortright Capital

Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 685 (S.D.N.Y. 2018)).

Federal Rule of Civil Procedure 39(a)(2) provides that a jury demand may be stricken if

"the court, on motion or on its own, finds that on some or all of th[e] issues there is no federal

right to a jury trial." Fed. R. Civ. P. 39(a)(2). "In determining whether to enforce a waiver clause by striking a jury demand, courts consider two inquiries: first whether the clause is enforceable—*i.e.*, 'whether waiver is knowing and voluntary'—and second, 'whether the claims in the action fall within the scope of the jury waiver clause.'" *Stephens*, 2019 WL 2725627, at *8 (quoting *Kortright*, 327 F. Supp. 3d at 685–86).

### A.     Enforceability of Jury Waiver

"The factors a court must consider in determining whether a contractual waiver of a right to a jury trial was entered into knowingly and voluntarily include: 1) the negotiability of the contract terms and negotiations between the parties concerning the waiver provision; 2) the conspicuousness of the waiver provision in the contract; 3) the relative bargaining power of the parties; and 4) the business acumen of the party opposing the waiver." *Morgan Guaranty Trust*, 36 F. Supp. 2d at 603 (citing *Sullivan v. Ajax Navigation Corp.*, 881 F. Supp. 906, 911 (S.D.N.Y. 1995)).

Plaintiff does not dispute that it knowingly, voluntarily, and intentionally waived its jury trial right. In fact, Plaintiff concedes the enforceability of the jury waiver as to some claims. The Court nonetheless considers the relevant factors and determines that the jury waiver provision of the Purchase Agreement was entered into knowingly and voluntarily. There is no indication that the terms of the Purchase Agreement were not negotiable, and Plaintiff does not dispute that it is a sophisticated corporate entity that was represented by counsel during negotiations and traded drafts of the agreement with Defendants prior to signing. *See* Dkt. Nos. 259-8, 259-9; *see also Kortright*, 327 F. Supp. 3d at 685; *Wechsler v. Hunt Health Sys., Ltd.*, 2003 WL 21878815, at *3 (S.D.N.Y. Aug. 8, 2003) (finding contract terms negotiable where "counsel represented defendants, reviewed the contracts, and made some revisions to the documents prior to defendants signing them"). There is also no indication of any substantial

disparity in bargaining power between the parties.  Moreover, the jury trial waiver was conspicuous in that it was set off in its own subsection and was in the same font and size as the other provisions.  *See American Equities Group, Inc. v. Ahava Dairy Products Corp.*, 2007 WL 4563487, at *3 (S.D.N.Y. Dec. 18, 2007) (noting that to determine whether a waiver is conspicuous, "courts have looked at the placement of the waiver within the contract, as well as the font size and style of the waiver," and finding that the waiver in that context was "sufficiently conspicuous" where it was "in the same font and size as all other provisions").  The same analysis applies to the jury waiver provision contained in the warrants, and the waiver provisions there were even more conspicuous as they were the only provisions written in all capital letters. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 1515120, at *2 (S.D.N.Y. May 13, 2022) (finding jury trial waiver conspicuous where, inter alia, it was "the only contract provision written in all capital letters"); *Kortright*, 327 F. Supp. 3d at 685 (finding that "the placement of the jury waiver provisions, which are set off in their own subsection in all-capital letters and in the same size as the language in the agreement, also suggests that the parties' jury trial waiver was knowing and voluntary"); *Morgan Guaranty Trust*, 36 F. Supp. 2d at 604 (finding a jury waiver provision "quite conspicuous" because, *inter alia*, "[i]t was written in all capital letters").

### B.      Scope of Jury Waiver

Once a court has established that the waiver is enforceable, "the court must then determine whether the particular claim asserted falls within the scope of the jury waiver." *Sherrod v. Time Warner Cable, Inc.*, 2014 WL 6603879, at *2 (S.D.N.Y. Nov. 21, 2014) (collecting cases).  "In interpreting these provisions, courts have reiterated the general precept that contractual provisions containing jury trial waivers should be 'narrowly construed.'"

*Kortright*, 327 F. Supp. 3d at 686.  "Nonetheless, the plain language of 'enforceable waiver provisions must be construed literally.'"  *Id.* (quoting *Wechsler*, 2003 WL 21878815, at *6).

The jury waiver in Section 11.15 of the Purchase Agreement states that "[e]ach party hereto waives, to the fullest extent permitted by applicable Law, any right it may have to trial by jury in respect of any Proceeding arising out of this Agreement or the Transaction."  Dkt. No. 259-7 § 11.15.  While "Agreement" is defined as the Membership Interest Purchase Agreement (referred to as the Purchase Agreement in this Opinion), "Transaction" is defined more broadly to mean "the transactions contemplated by this Agreement and the other Transaction Documents," *id.*, art. X; *see also id.* § 1.2.  "Transaction Documents" in turn "means, collectively, this Agreement and all other agreements, certificates and instruments contemplated by this Agreement."  *Id.*, art. X.  If these definitions are pieced together, the jury waiver thus covers proceedings arising out of (1) the Purchase Agreement, (2) the transactions contemplated by the Purchase Agreement, and (3) the transactions contemplated by all other agreements, certificates, and instruments contemplated by the Purchase Agreement.  In other words, the jury waiver extends to the transactions contemplated by the employment agreements, promissory notes, and warrants, which are attached as exhibits to the Purchase Agreement.  Thus, the plain language of the jury waiver in Section 11.15 of the Purchase Agreement construed literally reveals that the jury waiver applies not only to the Purchase Agreement but also to the transactions contemplated by the employment agreements, promissory notes, and warrants included as exhibits to the Purchase Agreement.

Plaintiff argues that the jury waiver should not be interpreted in this way and instead should apply only to the Purchase Agreement itself.  To support this argument, Plaintiff points to the fact that the warrants include their own jury waiver provisions and argues that the inclusion

of the jury waiver provisions in the warrants show that the jury waiver in the Purchase Agreement should be limited to the Purchase Agreement and that no jury waiver provision applies to the employment agreements and promissory notes, which do not themselves have such provisions.

The Court is not persuaded by this argument. First, Plaintiff's interpretation renders parts of Section 11.15 of the Purchase Agreement mere surplusage. "[A]n interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." Restatement (Second) of Contracts § 203(a). Had the parties wished the jury waiver to apply only to the Purchase Agreement, they could have said that the waiver applied to "any Proceeding arising out of this Agreement," defined to be the Purchase Agreement. Section 11.15, however, waives a jury right to "any proceeding arising out of this Agreement *or the Transaction*," *id.* § 11.15 (emphasis added), and the term "Transaction" and the terms nested in the definition of that term apply to more than just the Purchase Agreement; they apply to all the transactions contemplated in the agreements attached as exhibits to the Purchase Agreement.

Second, Plaintiff's argument based on the interpretive maxim *expressio unius est exclusio alterius* runs counter to the plain language of Section 11.15. For the purpose of the warrants, the more specific jury waiver in Section 14(g) of the warrants can be understood to override the general jury waiver in the Purchase Agreement that otherwise applies to the transactions contemplated by the attached exhibits. But that does not mean that the general jury waiver in the Purchase Agreement must be deprived of meaning for the transactions contemplated in the attached exhibits. "[I]t is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'" *Aramony v. United Way of Am.*,

254 F.3d 403, 413 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c)).  Section 14(g) of the warrants tellingly is broader than the jury waiver provision in Section 11.15 of the Purchase Agreement.  Section 14(g) provides that "each of the registered holder and the company waives, to the fullest extent permitted by law, any and all right to trial by jury in any legal proceeding (whether based on contract, tort or otherwise) arising out of *or related to* this warrant." Dkt. No. 259-7, Ex. E § 14(g) (all-capitalization omitted) (emphasis added); *see also id.*, Ex. F § 14(g).  By contrast, Section 11.15 covers proceedings "arising out of" the Purchase Agreement or the Transaction.  The difference in language must be ascribed meaning.  Courts in this District "have construed 'relating to' as tantamount to having a connection, relation, or association with something," *Kortright*, 327 F. Supp. 3d at 687, and "in interpreting the term in the context of an insurance contract, the Second Circuit explained that the phrase 'related to' is broader than 'arising out of,' and does not necessarily implicate a causal connection," *id.* (citing *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128–29 (2d Cir. 2001)).  Plaintiff itself concedes that courts have indicated that the phrase "related to" sweeps more broadly than the phrase "arising out of."  Dkt. No. 263 at 6–7.  In addition, while Section 11.15 of the Purchase Agreement waives the jury right as to "any Proceeding" (defined broadly to include not only actions and suits but also investigations, audits, and inquiries, among other proceedings), Section 14(g) waives the jury right as to "any legal proceeding."  Thus, while the more specific language of Section 14(g) governs the warrants, the more general language of Section 11.15 governs the Purchase Agreement and the transactions contemplated by the exhibits to the Purchase Agreement.  That Section 14(g) sets forth a more specific jury waiver as to the warrants does not obviate the plain language of Section 11.15 and its extension to the transactions contemplated by the exhibit agreements.

Plaintiff also argues that the Court should not construe Section 11.15 of the Purchase Agreement to apply to the agreements attached as exhibits to the Purchase Agreement because a jury waiver in one agreement does not waive a jury demand for claims arising from a related agreement.  Dkt. No. 263 at 5.  But that argument ignores a fundamental principle of contract law in New York.[6]  New York law long has permitted parties to a contract to incorporate terms from another document or contract by reference.

> A paper so referred to and described, in a written instrument, that it may be identified beyond all reasonable doubt, may be, by such reference, made a part of the instrument, as if incorporated into the body of it.  It is not necessary that the paper referred to should be annexed to or deposited in the same place with the instrument of which it is made a part by reference.  It is the reference to the paper by proper description and identification, in a manner and by words indicating an intent to make it a part of the instrument, that affects the incorporation of it for all purposes.

*In re Bd. of Comm'rs of Washington Park*, 52 N.Y. 131, 134 (1873).  "New York follows th[e] common law rule by 'requir[ing] that the paper to be incorporated into a written instrument by reference must be so referred to and described in the instrument that the paper may be *identified beyond all reasonable doubt*.'"  *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (second alteration in original) (quoting *Chiacchia v. National Westminster Bank USA,* 507 N.Y.S.2d 888, 889–90 (2d Dep't 1986)); *see also Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151, 163 (S.D.N.Y. 2014) (same); *Kenner v. Avis Rent A Car Sys., Inc.*, 678 N.Y.S.2d 213, 214 (4th Dep't 1998) (same).  "In addition to language explicitly identifying the referenced document, there must also be language that clearly communicates that the purpose of the reference is to incorporate the referenced material into the contract, rather than merely to

---

[6] New York law governs the Purchase Agreement.  *See* Dkt. No. 259-7 § 11.13 ("This Agreement shall be governed by, and construed in accordance with, the Law of the State of New York, regardless of the laws that might otherwise govern under applicable principles of conflicts of law thereof.").

acknowledge that the referenced material is relevant to the contract, e.g., as background law." *Spira v. Aeroflot-Russian Airlines*, 552 F. Supp. 3d 418, 424–25 (E.D.N.Y. 2021) (internal quotation marks omitted) (quoting *Intesa Sanpaolo, S.p.A. v. Credit Agricole Corporate & Inv. Bank*, 2013 WL 4856199, at *3 (S.D.N.Y. Sept. 10, 2013)).  "When a contract clearly identifies a single document, it eliminates all reasonable doubt and thus qualifies as an effective incorporation."  *Laureate Educ., Inc. v. Ins. Co. of the State of Pennsylvania*, 2014 WL 1345888, at *7 (S.D.N.Y. Mar. 31, 2014) (quoting *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp. 2d 157, 165 (E.D.N.Y. 2012)); *see also Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela*, 991 F.2d 42, 47 n.8 (2d Cir. 1993) (holding document was incorporated by reference when contract contained "a specific reference to a single document directly identified by name" rather than "a vague allusion to an entire class of documents"); *MTA Bus Non-Union Emps. Rank & File Comm. ex rel. Simone v. Metro. Transp. Auth.*, 899 F. Supp. 2d 256, 266 (S.D.N.Y. 2012) (finding that unambiguous reference to the pension plan document means that the pension plan document is incorporated by reference into the offer letter).  The Purchase Agreement does precisely that.  The Purchase Agreement expressly incorporates the identified and attached exhibits as if they appeared in the text of the Purchase Agreement rather than in an exhibit.  *See* Dkt. No. 259-7 § 11.12 ("All Schedules, Exhibits and Annexes attached hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.").

The cases cited by Plaintiff thus are readily distinguishable.  Plaintiff, for example, cites *Cohn v. Adler*, 526 N.Y.S.2d 843, 844 (2d Dep't 1988), in which the court held that the jury waiver in a lease agreement did not preclude a jury trial on a claim arising from a breach of a separate purchase agreement.  But the court there reasoned that "there was no reference in the

lease containing the jury waiver to any other agreements entered into between the same parties," and "[h]ad the parties intended for the jury waiver to apply to the purchase agreements, a statement to that effect could have been included." *Id.* Here, however, unlike in *Cohn*, the parties did refer to the other agreements in the jury waiver provision (Section 11.15) of the Purchase Agreement. *Partners Coffee Co., LLC v. Oceana Servs. & Prod. Co.*, 2009 WL 4572911 (W.D. Pa. Dec. 4, 2009), cited by Plaintiff is similarly unpersuasive. There the court held that the phrase "this Agreement"—in a jury waiver covering litigating "arising out of, under or in connection with this Agreement"—limited the scope of the waiver clause to that specific agreement and did not extend the waiver to related agreements between the parties. *Id.* at \*14. The jury waiver in Section 11.15 of the Purchase Agreement, however, notably does not merely limit the waiver to "this Agreement" and instead specifically covers "this Agreement or the Transaction," a further defined term. Finally, Plaintiff's reliance on *Luis Acosta, Inc. v. Citibank, N.A.*, 920 F. Supp. 15, 18–19 (D.P.R. 1996), falls short for the same reason. Unlike the jury waiver provision in the agreement described in that case, the jury waiver provision here expressly includes language extending beyond the Purchase Agreement alone and to the exhibit agreements incorporated by reference.

Having interpreted the scope of the jury waiver provisions, the Court determines whether the claims and counterclaims remaining in the case fall within the scope of the jury waiver. As discussed, Plaintiff concedes that the jury waiver applies to its claim for fraudulent omission (first claim) and to the counterclaims related to the warrants (second and third counterclaims). The jury waiver also applies to the indemnification counterclaims brought under the Purchase Agreement (sixteenth through eighteenth counterclaims) because these claims directly arise out of the Purchase Agreement. The jury waiver also applies to the counterclaims for breach of

Rhulen's employment agreement (first counterclaim) and repudiation under the promissory notes (fifth counterclaim) because these claims arise out of the transactions contemplated in Rhulen's employment agreement and the promissory notes, respectively.

Plaintiff's email-related claims for breach of fiduciary duty (second claim), conversion (fourth claim), and trespass to chattels (fifth claim) are a closer question. More specifically, the question is whether these tort claims "aris[e] out of" the transactions contemplated by the employment agreements referenced in the Purchase Agreement. Notably, unlike the broader language in the warrants' jury waivers (which covers both legal proceedings "arising out of or related to" the warrants), the jury waiver in the Purchase Agreement does not extend to proceedings "related to" the transactions contemplated by the employment agreements contemplated by the Purchase Agreement.

As mentioned earlier, the Second Circuit, in the context of an insurance contract, has interpreted the phrase "arising out of" to indicate a causal connection. *See Coregis*, 241 F.3d at 128–29. "To 'arise' out of means 'to originate from a specified source.'" *Id.* at 128 (quoting Webster's Third New International Dictionary (1986)). The Second Circuit also noted that the phrases "arising out of" and "related to" must be "given independent meaning" as the provision at issue there used both phrases and to interpret them otherwise would render some words mere surplusage. *Id.* Therefore, "[t]he term 'related to' is typically defined more broadly and is not necessarily tied to the concept of a causal connection." *Id.*; *see also id.* ("Webster's Dictionary defines 'related' simply as 'connected by reason of an established or discoverable relation.' The word 'relation,' in turn, as 'used especially in the phrase "in relation to,"' is defined as a 'connection' to or a 'reference' to." (alteration adopted) (quoting Webster's Third New International Dictionary)). "Courts have similarly described the term 'relating to' as equivalent

to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to,' and 'with reference to,' and have held such phrases to be broader in scope than the term 'arising out of.'" *Id.* at 128–29 (citations omitted); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389 (2d Cir. 2007) ("We do not understand the words 'arise out of' as encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 644 (1985) (Stevens, J., dissenting), for "distinguishing between scope afforded by phrases 'arise' out of and 'in relation to'")).

Here, the email claims sounding in tort for breach of fiduciary duty (second claim), conversion (fourth claim), and trespass to chattels (fifth claim) do not arise out of the transactions contemplated by the employment agreements.

*In re MF Global Inc.*, 496 B.R. 315 (S.D.N.Y. 2013), addresses the interpretation of the phrase "arising under." In that case, there was an anti-assignment provision that prohibited the assignment of any claims of one party against the other party "arising under" certain agreements. *Id.* at 321. The parties disputed whether claims, which sounded in tort and not in contract, arose under the agreements. *Id.* The court discussed how the Second Circuit, in interpreting an arbitration clause, narrowly construed the "arising under" contractual language to exclude tort claims. *See id.* (discussing *Petition of Kinoshita & Co.*, 287 F.2d 951 (2d Cir. 1961)). By contrast, the court noted how courts in this Circuit have interpreted "more expansive contractual provisions than the 'arising under' language"—i.e., the broader "arising out of or relating to" language—"to encompass tort claims." *Id.* The court therefore held that the anti-assignment

provisions "apply only to contractual claims arising from a 'literal interpretation or performance of the contract,' and not to the independent tort claims at issue here." *Id.* at 322.

*Capri Sun GmbH v. American Beverage Corporation*, 2022 WL 976270 (S.D.N.Y. Mar. 31, 2022), is also instructive in distinguishing between claims that "arise from" and "relate to" an agreement. The question there was whether trademark infringement claims "related to" a licensing agreement such that they were covered by the liability limiting clause for claims related to the agreement. *Id.* at *70. The court rejected the argument that the trademark infringement claims did not relate to the agreement because the legal basis for those claims was supplied by statutory law and common law as opposed to the contract. *Id.* The court stated, however, the point may have been "dispositive" had the agreement's liability limitation clause "run to claims 'arising from'" the agreement. *Id.* Because the clause used the term "related to," which was "different, farther-reaching, and 'extremely broad,'" the infringement claims were covered by the clause. *Id.*

Here, the jury waiver reaches only proceedings "arising out of" the transactions contemplated by the employment agreements. Those transactions encompassed the delivery of services in exchange for consideration. Unlike a claim alleging a breach of the employment agreements themselves, these tort claims do not find their legal basis in the employment agreements. Instead, the legal basis for these claims stem from Delaware law and New York law, not from the employment agreements. Because the email claims sound in tort and are based on other legal bases than the employment agreements themselves, these claims do not "arise out of" the transactions contemplated by the employment agreements and are not covered by the jury waiver. At the time of contracting, the parties contemplated that disputes addressed by the employment agreements would be tried to the court rather than to a jury. They did not

contemplate that extracontractual disputes, arising from facts after the time of the transaction and based on law other than the agreements into which the parties entered, would have been covered by the jury waiver provision.

It is true that in some sense the tort claims "relate to" or are "associated with," *Phillips*, 494 F.3d at 389, the transactions contemplated by the employment agreements. *See, e.g.*, *Kortright*, 327 F. Supp. 3d at 686–87 (holding that tort claim arising from the parties' contractual relationship fell within jury waiver that covered claims "relating in any way" to the agreements or the operation of a fund); *In re Actrade Fin. Techs. Ltd.*, 2007 WL 1791687, at *1 (Bankr. S.D.N.Y. June 20, 2007) (holding that "extremely broad" jury waiver that includes "any dispute 'arising from' *the* '*relationship*'" between two parties was broad enough to encompass related tort claims (emphasis added)). But for Rekor's agreement to employ Rhulen and Loughlin, those persons would not have generated or had access to the emails and would not have been in a position to convert them or trespass on them. Rhulen's and Loughlin's employment by Rekor also forms the basis for the fiduciary duties they owed to the company. But the jury waiver in the Purchase Agreement does not cover the broader category of claims "related to" or "associated with" the transactions contemplated by the employment agreements; it only covers claims "arising out of" those transactions. And jury waiver provisions must be "narrowly construed." *Morgan Guaranty Trust*, 36 F. Supp. 2d at 603. The parties could not have contemplated at the time of contracting that every act of conversion, trespass, or breach of duty made possible because Rhulen and Loughlin were executives would be, for that reason alone, covered by the jury waiver provision. For the same reasons, the email claims are not covered by the jury waiver here.

Lastly, the parties do not dispute that the remaining indemnification counterclaims (seventh through fifteenth counterclaims) are not covered by a jury waiver.[7]

In summary, there is no right to a jury trial on Plaintiff's claims for fraudulent omission (first claim) or on Defendants' counterclaims for breach of Rhulen's employment agreement (first counterclaim); failure to honor Loughlin and Satterfield's warrants (second counterclaim); repudiating Rhulen's warrants (third counterclaim); repudiating the promissory notes (fifth counterclaim); and indemnification under the Purchase Agreement (sixteenth through eighteenth counterclaims). Plaintiff's claims for breach of fiduciary duty as to Loughlin and Rhulen (second claim); conversion as to Loughlin and Rhulen (fourth claim); trespass to chattels as to Loughlin and Rhulen (fifth claim); and the remainder of Defendants' indemnification counterclaims (seventh through fifteenth counterclaims), however, are subject to determination by a jury.

---

[7] Defendants seek to withdraw their jury demand with respect to these indemnification counterclaims. Dkt. No. 260 at 2. "[A] party may withdraw its demand for a jury trial 'only if the parties consent.'" *S.E.C. v. Masri*, 551 F. Supp. 2d 320, 321 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 38(d)). "This requirement permits a party to rely on a jury demand originally made by an adversary." *Id.* Defendants thus may not unilaterally and without Plaintiff's consent withdraw their jury demand as to these counterclaims.

Defendants alternatively argue that these claims are subject only to summary adjudication by the Court after determination of the merits. *See* Dkt. No. 260 at 2, 8–9 (citing no authority in support); Dkt. No. 270 at 5 (citing a case for the proposition that there was no right to a jury trial on a claim for the advancement of attorneys' fees). Plaintiff responds that a jury must determine whether Defendants are entitled to indemnification. Dkt. No. 263 at 11–12. Contrary to Defendants' view, a jury may decide whether an individual may be indemnified. *See Manley v. AmBase Corp.*, 121 F. Supp. 2d 758, 767 (S.D.N.Y. 2000) (discussing jury determination of whether an individual acted in good faith and in a manner reasonably believed to be in the best interests of the corporation so as to be entitled to indemnification). Here, the indemnification claims may go to the jury. For example, as was the case in *Manley*, the indemnification clause under the Firestorm Franchising Operating Agreement at issue in the tenth through twelfth counterclaims requires a finding that the person to be indemnified acted in good faith and in a manner reasonably believed to be in the best interests of the company. *See* Dkt. No. 54-26 § 16(a). Defendants have not shown that a jury is precluded from deciding the indemnification claims in this case.

**III.      Bifurcating Trial Pursuant to Federal Rule of Civil Procedure 42(b)**

Defendants request that the Court bifurcate the trial to have a trial on the claims and counterclaims to be tried to the bench before a jury trial on those subject to determination by a jury.  Dkt. No. 260 at 9–11.  Plaintiff instead seeks a jury trial on all causes of action to avoid duplication of evidence and other inconvenience, inefficiency, and use of resources.  Dkt. No. 263 at 15–16.  Federal Rule of Civil Procedure 42(b) provides: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims.  When ordering a separate trial, the court must preserve any federal right to a jury trial."  Fed. R. Civ. P. 42(b).  The decision to separate claims and bifurcate the trial lies firmly in the district court's discretion.  *Wechsler*, 2003 WL 21878815, at *6.  Here, the vast majority of the claims and counterclaims remaining in the case are to be tried to the bench.  The facts and issues relevant to the fraudulent omission claim and breach of contract counterclaims are distinct from those relevant to the email claims and indemnification counterclaims.  There is no efficiency in trying all of the issues together.  Conducting a bench trial on the fraud claim (first claim) and contract counterclaims (second, third, fifth, sixteenth through eighteenth counterclaims) before a jury trial on Plaintiff's email claims (second, fourth, and fifth claims) and most of Defendants' indemnification counterclaims (seventh through fifteenth counterclaims) would serve the interests of judicial economy and efficiency without prejudicing either party.  Accordingly, the Court will bifurcate the trial in this way.

**CONCLUSION**

The motion is GRANTED IN PART and DENIED IN PART.

The Clerk of Court is respectfully directed to close Dkt. No. 239.


SO ORDERED.


Dated: August 5, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge