UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

Rekor Systems, Inc.,                                        :

                        *Plaintiff, and Counterclaim-* :
                        *Defendant,* :

                                   :

            -v-                        :

                                   :

Suzanne Loughlin, Harry Rhulen and James
Satterfield,                                                    :

                                 :

                        *Defendants, and* :
                        *Counterclaim-Plaintiffs,* :

                                 :

           and                     :

                                 :

CrisisRisk Strategies, LLC,                            :

                                 :

                        *Counterclaim-Plaintiff,* :

                                 :

           -v-                      :

                                 :

Firestorm Solutions, LLC, and Firestorm
Franchising, LLC,                                          :

                                 :

                      *Counterclaim-Defendants.* :

                                 :

-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _02/06/2023__

19-cv-7767 (LJL)

<u>OPINION AND ORDER</u>

LEWIS J. LIMAN, United States District Judge:

      Plaintiff and Counterclaim-Defendant Rekor Systems, Inc. ("Plaintiff" or "Rekor") and

Defendants and Counterclaim-Plaintiffs Suzanne Loughlin, Harry Rhulen, and James Satterfield

("Defendants") each move in limine to exclude evidence offered by the other party.  Dkt. Nos.

335, 340.  Plaintiff moves to exclude: (1) evidence and testimony from Defendants' damages

expert Lawrence Chodor ("Chodor"); (2) evidence and argument concerning prior judgments,

litigations, and character of Plaintiff's Chief Executive Officer Robert Berman ("Berman"); and

(3) evidence and argument concerning previously-adjudicated claims.  Dkt. Nos. 335, 336.

Defendants move to exclude evidence concerning: (1) personal conflict between Defendants and Berman, and Defendants' job performance; (2) the "computer claims;"[1] (3) Firestorm's post-acquisition business performance; and (4) a contemplated expansion of Firestorm's relationship with Beazley Insurance Company ("Beazley").  Dkt. Nos. 340, 341.  For the reasons that follow, Plaintiff's motions are granted in part and denied in part and Defendants' motions are denied.

## BACKGROUND

Familiarity with the prior proceedings in this matter is assumed.  The case arises out of the January 2017 sale by Loughlin, Rhulen, and Satterfield to Rekor of businesses owned by them named Firestorm Solutions, LLC ("FSLLC") and Firestorm Franchising, LLC ("FFLLC" and, together with FSLLC, "Firestorm").  FSLLC was in the business of providing business continuity planning and crisis response services to its customers and FFLLC—FSLLC's partially-owned subsidiary—operated a group of franchises that marketed and serviced FSLLC's crisis planning services to customers.  In the course of its business, FFLLC entered into franchise agreements.  FSLLC used FFLLC's franchise system as its sales force and often provided crisis planning services to customers engaged by franchises of FFLLC.

On January 25, 2017, Rekor purchased Firestorm pursuant to a Membership Interest Purchase Agreement ("Purchase Agreement"), and FSLLC and FFLLC became sub-subsidiaries of Rekor.  In exchange, Loughlin, Rhulen, and Satterfield received cash, shares in Rekor common stock, warrants to purchase Rekor common stock ("Warrants"), and promissory notes ("Promissory Notes").  In addition, pursuant to the Purchase Agreement, Loughlin and Rhulen resigned all positions at FSLLC and became officers of Rekor.  Rhulen became the President of

---

[1] Defendants define the "computer claims" as the "causes of action for breach of fiduciary duty, violation of the Computer Fraud and Abuse Act, conversion, and trespass to chattels, all premised on the allegation that Defendants wrongfully destroyed or misappropriated digital material belonging to Firestorm."  Dkt. No. 341 at 6.

Rekor and Loughlin became the General Counsel and Chief Administrative Officer of Rekor. Satterfield maintained his positions at Firestorm and continued as the President and Chief Executive Officer of FSLLC and FFLLC.

Ultimately, all three resigned from their positions at Rekor and/or Firestorm.  The resignations followed complaints by Rhulen about Berman's management of the business, a whistleblower complaint by Rhulen against Berman, and complaints by Berman and Rekor about Firestorm's performance.  After the resignations, the operations of Firestorm were discontinued. Rekor did not honor the warrants issued to Defendants and failed to pay interest or principal on the Promissory Notes.

Plaintiff alleges that Defendants made materially false and misleading representations and omissions in connection with the execution of the Purchase Agreement, including that (1) Firestorm had a critical mass of viable franchisees that had paid to participate in Firestorm's franchising program; (2) each franchisee paid an initial franchise fee of approximately $50,000– $60,000; (3) each franchisee paid a continuing minimum monthly royalty fee of the greater of $1,000 per month or eight percent of gross revenues; and (4) that Firestorm had negotiated a major deal with Beazley that would provide Firestorm with a standby fee of $10–$20 per policy issued by Beazley, covering approximately 800,000 policies and generating millions of dollars in recurring revenue for Firestorm.  Plaintiff also alleges actionable omissions.  Plaintiff seeks rescission of the Purchase Agreement or damages in the alternative.

Defendants dispute Plaintiff's allegations.  Defendants claim that there were no misrepresentations, that information about the franchise contracts was not material, and that there is no evidence of scienter.  Defendants also assert counterclaims for the failure to honor their warrants and failure to pay interest and principal.  They assert, in essence, that the claim of fraud

on the basis of which Plaintiff failed to honor the contracts is contrived.  Rhulen alleges in a

counterclaim that Rekor breached his employment agreement by demoting him from his position

as President of Rekor to Executive Vice President of Firestorm.

## DISCUSSION

"The purpose of an in limine motion is 'to aid the trial process by enabling the Court to

rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are

definitely set for trial, without lengthy argument at, or interruption of, the trial.'"  *United States*

*v. Ulbricht*, 79 F. Supp. 3d 466, 478 (S.D.N.Y. 2015) (quoting *Palmieri v. Defaria*, 88 F.3d 136,

141 (2d Cir. 1996)).  "The trial court should exclude evidence on a motion in limine only when

the evidence is clearly inadmissible on all potential grounds."  *Id.* (quoting *United States v.*

*Ozsusamlar*, 428 F. Supp. 2d 161, 164–65 (S.D.N.Y. 2006)); *see also Howard Univ. v. Borders*,

2022 WL 3355264, at *1 (S.D.N.Y. Aug. 14, 2022); *King v. Wang*, 2021 WL 5232454, at *1

(S.D.N.Y. Nov. 9, 2021).  With those principles in mind, the Court considers each motion in

turn.

## I.      Plaintiff's Motion to Exclude Expert Testimony of Lawrence Chodor

Plaintiff moves to exclude the testimony set forth in the April 22, 2022 rebuttal expert

report of Chodor (the "Chodor Report").  The motion is denied.

Plaintiff has submitted a report of an expert, Donald M. May ("May" and the "May

Report") in support of its claim for damages.  Dkt. No. 337-1.  May calculates Plaintiff's

damages to be $3,397,585 as of September 2019 (and $4,162,042 as of the March 2022 date of

his report) based on the difference between the aggregate value of the cash payments, common

stock, Promissory Notes, and Warrants provided to Defendants as consideration under the

Purchase Agreement, Defendants' salaries, and additional investments made in Firestorm, minus

what he opines was the actual value of Firestorm as of the time of the Purchase Agreement.  *Id*.

at 12.  Chodor criticizes the May Report on the grounds, among others, that it fails to assign value to Defendants' managerial talents and to an anticipated deal with Beazley, that it improperly includes in its calculation of damages Defendants' salaries, the Warrants and Promissory Notes provided pursuant to the Purchase Agreement, and Rekor's additional investments in Firestorm, and that it should have deducted the value of services Defendants provided to Plaintiff.  Dkt. No. 337-2.

Plaintiff argues that Chodor's calculations are not based on specific principles of accounting or economic analysis, that Chodor engages in advocacy based on one-sided factual narratives and proffers legal conclusions, and that Chodor's conclusion that Rekor has not suffered any damages is unreliable.  Dkt. No. 336 at 5–14.  Defendants respond that Chodor will address specific defects in May's damages analysis, that he does not intend to offer a competing damages estimate, and that he will not be asked to summarize issues of fact or to offer opinions of law, but instead will offer opinions based on assumed facts.  Dkt. No. 344 at 1–7.

"*Daubert* motions function somewhat differently in the context of bench trials:  '[T]he court's gatekeeper role is necessarily different during a bench trial.  In a bench trial, the judge acts as both gatekeeper and factfinder.  The judge must determine both whether expert evidence is admissible under Rule 702 and whether it is credible.  When the gatekeeper and the trier of fact are the same, the court may admit evidence subject to the ability later to exclude it or disregard it, if the evidence turns out not to meet the standard of reliability under Rule 702.'" *Town & Country Linen Corp. v. Ingenious Designs LLC*, 2022 WL 2757643, at *2 (S.D.N.Y. July 14, 2022) (quoting 4 Weinstein's Federal Evidence § 702.02); *see also In re Salem*, 465 F.3d 767, 777 (7th Cir. 2006) ("[W]here the factfinder and the gatekeeper are the same, the court does not err in admitting the evidence subject to the ability later to exclude it or disregard it if it

turns out not to meet the standard of reliability established by Rule 702.").  Thus, "where a bench

trial is in prospect, resolving *Daubert* questions at a pretrial stage is generally less efficient than

simply hearing the evidence."  *Victoria's Secret Stores Brand Mgmt., Inc. v. Sexy Hair Concepts,*

*LLC*, 2009 WL 959775, at *6 n.3 (S.D.N.Y. Apr. 8, 2009).

      Plaintiff argues that, in leveling critiques against May, Chodor "does not cite any specific

principles of accounting or economic analysis, articulate any complex economic ideas, or

otherwise apply the particular skills and knowledge of an expert economist."  Dkt. No. 336 at 6.

The Court need not prejudge the force of Plaintiff's argument or Defendants' responses.  "In this

case, since the Court has already been exposed to [the expert]'s analysis and to competing

arguments regarding its weight and admissibility, permitting cross-examination and permitting

the [Plaintiff] to renew its *Daubert* motion after [the expert] has stepped off the stand will only

permit the Court to analyze the Rule 702 issues on a more complete record."  *3DT Holdings LLC*

*v. Bard Access Sys. Inc.*, 2022 WL 2037853, at *1 (S.D.N.Y. May 10, 2022) (citing *Joseph S. v.*

*Hogan*, 2011 WL 2848330, at *2 (E.D.N.Y. July 15, 2011) (stating that, in a bench trial, "expert

testimony should be admitted so that the Court could have the benefit of live testimony and

cross-examination to determine how much weight, if any, to give to the expert's conclusions")).

As Judge Caproni cogently put it, "there is no need for the Court to 'gate-keep expert testimony

from [itself].'"  *Matter of Manhattan by Sail, Inc.*, 436 F. Supp. 3d 803, 810 (S.D.N.Y. 2020)

(quoting *Hogan*, 2011 WL 2848330, at *2).

      The remainder of Plaintiff's arguments lack force.  Chodor will not testify to the facts.  It

is not improper for him to offer opinions based on assumed facts.  The Court also is capable of

independently reaching its own conclusions as to the law, regardless of what Chodor might say.

Finally, since Chodor will not offer his own independent calculation of damages but testify only

as to defects in May's damages analysis, Plaintiff's arguments that Chodor's calculation of damages is unreliable are moot.

## II.     Plaintiff's Motion to Exclude Evidence and Arguments Concerning Berman's Prior Judgments, Litigations, and Character

Plaintiff seeks to exclude evidence of the following matters regarding Berman: (1) a Certification of Tax Warrant reflecting the outcome of a proceeding by the New York State Department of Taxation and Finance against Berman for unpaid taxes and reflecting the entry of judgment against him in September 2015 in an amount in excess of $1 million; (2) unrelated civil litigation in which Berman was a defendant; and (3) allegations of Berman's "bullying" towards individuals other than Defendants.  Dkt. No. 336 at 14–23.  Plaintiff argues that the evidence is irrelevant under Rule 401 and more prejudicial than probative under Rule 403 and that it constitutes improper character evidence that is inadmissible for the truth under Rule 404(b)(1) and not proper impeachment material under Rule 608(b).  *Id.*

"The definition of relevance under Fed. R. Evid. 401 is very broad, and as a result, the standard for relevance is very low.  So long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry."  *United States v. Jones*, 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018) (cleaned up).  The standards for relevance and prejudice operate differently in bench trials than in jury trials.  "The risk of the admission of irrelevant evidence in a bench trial is that it will prolong the proceedings; the risk of its exclusion is that the Court will court error and make a decision on an incomplete record."  *Howard Univ. v. Borders*, 2022 WL 3355264, at *7 (S.D.N.Y. Aug. 14, 2022); *see Com. Funding Corp. v. Comprehensive Habilitation Servs., Inc.*, 2004 WL 1970144, at *5 (S.D.N.Y. Sept. 3, 2004) ("While standards for admissible evidence are not 'out the window entirely' in a bench trial, 'all

doubts at a bench trial should be resolved in favor of admissibility.'" (citation omitted)); 8A

Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2885 ("In nonjury

cases the district court can commit reversible error by excluding evidence but it is almost

impossible for it to do so by admitting evidence.").

  The Certification of Tax Warrant is excluded.  Defendants argue that the September 2015

tax lien is relevant to Berman's character for truthfulness under Rule 608(b).  Dkt. No. 344 at 10.

Plaintiff represents that the tax lien reflects a settlement arising from a reasonable, good faith

dispute over Berman's primary place of residence for taxation purposes.  Dkt. No. 336 at 17.

Under Rule 608(b), in a civil case, "extrinsic evidence is not admissible to prove specific

instances of a witness's conduct in order to attack or support the witness's character for

truthfulness," but it may be "inquired into if probative of the character for untruthfulness or

untruthfulness of (1) the witness; or (2) another witness whose character the witness being cross-

examined has testified about."  Fed. R. Evid. 608(b).  The cases cited by Defendants support

only the proposition that it is permissible for a party to ask questions regarding tax returns "for

the purpose of attacking credibility and truthfulness if they have a good faith basis to believe [the

witness] in fact made an untruthful statement on such returns."  *Francois v. Mazer*, 2012 WL

12549430, at *1 (S.D.N.Y. May 14, 2012); *see United States v. Lanham*, 541 F. App'x 34, 36

(2d Cir. 2013) (holding that inquiry into fraudulent activity to frustrate tax liens was appropriate

under Fed. R. Evid. 608(b)); *Chnapkova v. Koh*, 985 F.2d 79, 82 (2d Cir. 1993) (holding that a

witness may be questioned about the failure to file tax returns for a period of eight years on

theory that it is similar to "[e]vidence that a witness has made false statements in a tax return

[that] is obviously a matter which affects the witness's credibility"); *United States v. Jones*, 900

F.2d 512, 520–21 (2d Cir. 1990) (cross-examination proper on false statements defendant made

on income tax returns). They do not stand for the proposition that evidence of a tax deficiency alone is probative of truthfulness, much less that extrinsic evidence of a tax lien is admissible. Recognizing that this is a bench trial, Defendants will be permitted a limited opportunity to ask Berman if he ever made a false statement on a tax return if they have a good faith basis for posing such a question. The Court has already been made privy to the existence of the tax lien. However, if Berman denies making a false statement, Defendants will not be permitted to challenge Berman's testimony with any extrinsic evidence.

The Court will also exclude evidence regarding Berman's prior lawsuits. Plaintiff represents, without dispute, that the prior legal proceedings in which Berman was a defendant involved separate business entities and completely different transactions, unrelated to Rekor, Firestorm, the individual Defendants, or the allegations in the case, and that there were no judgments or adverse findings against Berman in any of the prior legal matters Defendants seek to introduce. Dkt. No. 336 at 17. Defendants argue that the litigation shows Rekor's bad faith in prosecuting this claim and shows motive, intent, plan or absence of mistake under Rule 404(b)(2), noting that Rekor previously defended against a lawsuit for failure to pay fees owed under an underwriting agreement by counterclaiming (unsuccessfully) for fraud. Dkt. No. 344 at 11. The evidence is irrelevant under Rule 401 and more prejudicial than probative under Rule 403. Whether Rekor's claims in its prior litigations had merit has no bearing on whether its claims in this case have merit. Even recognizing that this is a bench trial, a detour into Berman's prior lawsuits and their merits would be a sideshow and would inevitably require the court to try the merits of those cases. It therefore would be a waste of time and would needlessly confuse the issues. *See Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) ("[C]ourts are reluctant to cloud the issues in the case at trial by admitting evidence relating to previous litigation involving one or

both of the same parties." (internal citations and quotation marks omitted)); *Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co.*, 2019 WL 3307850, at *7 (W.D. Va. July 22, 2019), *order clarified*, 2019 WL 4197221 (W.D. Va. Sept. 4, 2019) ("Generally, courts exclude evidence of other lawsuits, even if such lawsuits are related to the case before it.").

Finally, Plaintiff argues that Defendants should be precluded from offering documentary or testimonial evidence of Berman's "bullying," or abusive behavior to individuals who worked for him or were engaged to provide services to Rekor.  Dkt. No. 336 at 21.  Plaintiff argues that admission of such evidence would be unduly prejudicial within the meaning of Rule 403 because it would require Rekor to explain the circumstances surrounding each instance of purported bullying and would constitute improper character and impeachment evidence.  *Id.* at 21–23. Defendants seek to offer limited evidence regarding Berman's "abusive, threatening, and otherwise unprofessional conduct" "not for the fact of the conduct . . . but rather to show the content of . . . Rhulen's report to the Governance Committee . . . and to contextualize Rekor's and Berman's reaction to that report, including Rekor's termination of Rhulen's employment at the parent company level shortly after the conclusion of the investigation that followed from it." Dkt. No. 344 at 12.

This motion is denied.  Evidence of the information regarding Berman that Rhulen received prior to Rhulen's complaints to the Rekor board of directors is inextricably intertwined with the facts and claims of this case.  To the extent it is offered only to show that Rhulen acted in good faith and not for the truth of the matter (thereby avoiding the hearsay problem), it will not require the parties to delve into the facts of each alleged incident.  More broadly, evidence of the relationship between Berman and the Defendants in the immediate post-acquisition period is arguably relevant to the question whether Defendants' alleged representations were material and

whether Plaintiff was deceived or whether—to the contrary—such allegations were contrived

only after Rhulen's complaints and only as a basis for depriving Defendants of their rights under

the Warrants and under the Promissory Notes.  Recognizing that this is a bench trial, the Court

will receive the evidence and determine whether it is relevant only after it has been presented.

III.    **Plaintiff's Motion to Exclude Evidence Regarding Previously Excluded Claims**

Plaintiff seeks to preclude Defendants from offering the following evidence on the theory

that it relates to previously-adjudicated claims: (1) the new agreement whereby Defendants,

through CrisisRisk, performed work for Firestorm customers in exchange for providing twenty

percent of the revenue received to Firestorm; (2) work performance by Defendants for Firestorm

and/or Rekor immediately following their resignations; (3) the arrangement whereby Satterfield

boxed up Firestorm documents; and (4) the drafting and publication of Rekor's August 14, 2019

Form 10-Q.  Dkt. No. 336 at 23–24.  Plaintiff argues that the evidence is irrelevant under Rule

401 and excludable under Rule 403.  *Id.* at 24.  Plaintiff's motion is denied.

The limited evidence Defendants intend to offer regarding their post-resignation work

with and for Rekor and Firestorm is arguably relevant with respect to the issue of scienter and

goes as well as to damages.  *See RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2002 WL

31780188 at *1–3 (S.D.N.Y. Dec. 11, 2002).  If, in fact, Defendants continued to work for Rekor

after the close of the transaction and freely disclosed Firestorm documents, such evidence could

tend to negate the claim that they acted with scienter in concealing information prior to the

transaction.  Defendants also claim that the value of their managerial talent—acquired by Rekor

pursuant to the Purchase Agreement—should be included in the calculation of whether Rekor

suffered any damages as a result of the transaction.  Defendants have represented that they intend

to offer the Form 10-Q not for the purpose of proving up the allegedly libelous statement but for

other statements contained in it including Rekor's admission that its discontinuation of the

operations of FFLLC "d[id] not constitute a significant strategic shift that will have a material impact on the Company's ongoing operations and financial results."  Dkt. No. 344 at 14.

## IV.     Defendants' Motion to Exclude Evidence Concerning Personal Conflict Between Berman and Defendants and Defendants' Job Performance

Defendants seek to prevent Plaintiff from offering evidence related to (1) the merits of conflicts between them and Berman and (2) their job performance.  Dkt No. 341 at 3–5. Defendants argue that the evidence is irrelevant to Defendants' counterclaim that Plaintiff failed to honor the Notes and Warrants.  As to Rhulen's breach of contract claim, Defendants contend that his performance is irrelevant because the justification for his termination is not at issue—the only issue is who made the decision to remove Rhulen from employment at the parent company. *Id.* at 4.  Plaintiff argues that if Defendants are to offer evidence of their friction with Berman and Berman's purported conflicts with others and alleged failures in management, it is only fair that they be permitted to offer evidence of Berman's frictions with Defendants.  Dkt. No. 345 at 2–3.  If Defendants are permitted to offer evidence that Rekor breached Rhulen's employment agreement to satisfy a personal vendetta then, they say, Rekor should be permitted to offer evidence regarding "Rhulen's misconduct, bad faith, treachery, hubris and manipulations."  *Id.* at 6.  They also argue that the evidence goes to Defendants' credibility.  *Id.* at 7.

The motion is denied.  As noted, the conflict between Berman and Rhulen appears to be inextricably intertwined with the merits of this case.  Plaintiff asserts that it was defrauded because information about the side letters was not disclosed and Defendants made false representations about Beazley and that, as a result, they paid more for the business than it was worth based on those representations.  Defendants assert that the details of the franchise contracts were available and/or made known to Plaintiff, that Plaintiff engaged in the transaction to obtain the public company expertise of the Defendants and Firestorm's intellectual property

and not the franchise contracts, that Plaintiff conducted essentially no due diligence with respect to FFLLC, and that the complaints about the franchise contracts arose only after and as a result of Rhulen's complaints about Berman.  It thus appears unavoidable that the Court will need to hear evidence regarding Rhulen's complaints and the basis for making those complaints, at least as background evidence.  As to the job performance of Defendants, Chodor claims that Plaintiff's damages should be reduced because the value that Plaintiff received from the transaction included "the acquisition of managerial talent."  Dkt. No. 337-2 at 5.  For the same reason that Defendants will be permitted to offer evidence of their favorable job performance, Plaintiff will be permitted to offer evidence of their unfavorable job performance.  Leaving aside the question whether the value of such talent is properly considered in calculating damages, if Defendants are to make the claim that Plaintiff acquired valuable managerial talent as a result of the transaction, Plaintiff is permitted to offer evidence that the purported managerial talent had little to no positive value or potential negative value.

V.     **Defendants' Motion to Exclude Evidence Regarding Their Alleged Deletion or Misuse of Digital Materials in the Period Surrounding and Following Their Departure from Rekor**

Defendants move to preclude Plaintiff from offering evidence regarding their alleged misuse or deletion of emails allegedly belonging to Rekor in the period of time surrounding their departure from the company on the grounds that such evidence is irrelevant.  Dkt. No. 341 at 5–7.  Defendants argue that the evidence is relevant to Plaintiff's claims of breach of fiduciary duty, violation of the Computer Fraud and Abuse Act, conversion, and trespass to chattels, all of which will be tried separately to a jury.  *Id.* at 6.  The motion is denied and the Court will permit limited evidence on the subject of the emails.

Doubts should be resolved in favor of admissibility at a bench trial.  *See Comprehensive Habilitation Servs.*, 2004 WL 1970144, at *5.  Although the evidence appears to be of marginal

13

value, the Court cannot say at this point that, as a categorical matter, it cannot make a fact of relevance more or less probable.  Fed. R. Evid. 401.  If, in fact, Defendants were able to exploit the intellectual property that was sold to Plaintiff as a result of the transaction, that might bear on the question whether rescission—giving them back that intellectual property in exchange for the return of the consideration they received—would be a permissible remedy, assuming that Plaintiff is able to prove its claims of fraud.  Dkt. No. 345 at 9–10.

## VI. Defendants' Motion to Exclude Evidence of the Post-Acquisition Performance of Firestorm

Defendants seek to exclude evidence regarding the post-acquisition performance of Firestorm as irrelevant.  Dkt. No. 341 at 7–10.  Defendants argue that "Rekor's fraud defense to its obligations under the Notes and Warrants must rise or fall with the facts allegedly constituting the fraud—not its supposed post-hoc disappointment with Firestorm's lack of profitability."  *Id.* at 8.  They argue that Firestorm's post-acquisition performance under Rekor's management has no bearing on the truth of Defendants' representations regarding the operations and potential performance of the business pre-acquisition.  *Id.*  Defendants' argument misses the mark and the motion is denied.

Evidence of Firestorm's post-acquisition performance is directly relevant to the question of the falsity of its representations regarding the business pre-acquisition.  *See In re Vivendi Universal, S.A., Sec. Litig.*, 765 F. Supp. 2d 512, 553–54 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016).  If, for example, the franchisees paid all of the fees Defendants allegedly represented that they were paying and the business grew as expected, such evidence would strongly support the contention that Defendants' representations were not untrue.  By the same token, however, if the franchisees felt free to fail to pay post-acquisition or if the business was unable to attract other franchisees who would pay, such evidence would tend to support the

claims both that Defendants misrepresented the business and that the misrepresentations were material.  Defendants argue that the performance of Firestorm is a result of Rekor's management and not of Firestorm's pre-existing condition.  That is fodder for cross-examination and for a defense case.  It is not a basis for exclusion of the evidence.

## VII.    Defendants' Motion to Exclude Evidence Regarding the Prospective Relationship with Beazley Insurance Company

Defendants move to exclude evidence of the statements Defendants made before closing regarding a potential business relationship with Beazley on the grounds that predictions of a business relationship in the future cannot ground a fraud claim.  Dkt. No. 341 at 10–12.  Plaintiff alleges that Defendants told Berman before the acquisition that "Firestorm would imminently be executing a major deal with Firestorm's then-current client Beazley," Dkt. No. 64 ¶ 93, but that "this deal . . . was never realized," *id*. ¶ 97.

Defendants' motion is a disguised summary judgment motion.  *See Pavone v. Puglisi*, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) ("A motion in limine is not a proper vehicle for a party to ask the Court to weigh the sufficiency of the evidence to support a particular claim or defense, because [t]hat is the function of a motion for summary judgment, with its accompanying and crucial procedural safeguards" (internal citations and quotations marks omitted)).  The essence of Defendants' claim is that viewing the evidence most favorably to Plaintiff, Plaintiff cannot succeed in establishing fraud liability.  Those arguments may be made in summation when the Court considers its findings of fact and conclusions of law; they are not properly the basis of the exclusion of evidence on an in limine motion.  Moreover, Defendants made precisely the same arguments in their prior motion for summary judgment, Dkt. No. 148 at 10, and the Court denied Defendants' motion for summary judgment, Dkt No. 214 at 14–21.  Even assuming Defendants could make a second motion for summary judgment, these arguments would be

barred by law of the case.  *See Webber v. Dash*, 2020 WL 1989332, at * 2 (S.D.N.Y. Apr. 27, 2020).

Finally, and in any event, the New York courts have rejected the proposition that a present day statement about the likelihood of a future event can never be false and never support a fraud claim.  *See*, *e.g.*, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Wise Metals Grp., LLC*, 798 N.Y.S.2d 14, 16 (1st Dept. 2005) ("An expression or prediction as to some future event, known by the author to be false or made despite the anticipation that the event will not occur is deemed a statement of a material existing fact, sufficient to support a fraud action." (internal citations and quotation marks omitted)).  Plaintiff's proposed findings of fact and conclusions of law indicate that Plaintiff intends to prove that prior to the acquisition, Defendants represented that Firestorm was on the verge of consummating a lucrative deal with Beazley (by disclosing details of the anticipated deal and that it would generate millions of dollars of recurring revenue) but that, in fact, Firestorm was struggling to secure any appreciable business with Beazley, Dkt. No. 338 ¶¶ 58, 61, 184.  The deal never was consummated.  *Id.* ¶ 249.  Those allegations—albeit disputed—raise a question of fact for the Court at trial.

## CONCLUSION

Plaintiff's motions in limine are GRANTED in part and DENIED in part.  Defendants' motions in limine are DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 335, 340.

SO ORDERED.


Dated: February 6, 2023
New York, New York                          _____
                                                    LEWIS J. LIMAN
                                                    United States District Judge