UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

Rekor Systems, Inc.,

                            *Plaintiff, and Counterclaim-*
                            *Defendant,*

            -v-

Suzanne Loughlin, Harry Rhulen and James
Satterfield,

                          *Defendants, and*
                          *Counterclaim-Plaintiffs,*

          and

CrisisRisk Strategies, LLC,

                          *Counterclaim-Plaintiff,*

            -v-

Firestorm Solutions, LLC, and Firestorm
Franchising, LLC,

                          *Counterclaim-Defendants.*

--------------------------------------------------------------------X

                     19-cv-7767 (LJL)

                 <u>MEMORANDUM AND</u>
                      <u>ORDER</u>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/10/2023__

LEWIS J. LIMAN, United States District Judge:

       At the pretrial conference held yesterday, February 9, 2023, Defendants Suzanne

Loughlin, Harry Rhulen, and Jim Satterfield ("Defendants") moved to preclude Plaintiff Rekor

Systems, Inc. ("Plaintiff") from offering at trial four documents containing communications

between the Defendants and their counsel, Gary Silver, Esq., regarding the Membership Interest

Purchase Agreement ("MIPA") pursuant to which Defendants sold their interests in Firestorm

Solutions LLC and Firestorm Franchising LLC to Plaintiff.  The documents are in the form of

emails and are numbered PX-94, PX-101, PX-106, and PX-108.  It is not disputed that each of

the communications would have been considered to be privileged when made—they constitute communications between client and counsel made for the purpose of obtaining or providing legal advice which initially were confidential and were intended to be confidential.  The documents resided in the files and email accounts of Firestorm Solutions LLC ("FSLLC"), the equity of which Plaintiff purchased pursuant to the MIPA.   The files and email accounts were in the possession of FSLLC when Plaintiff acquired it; Plaintiff then gained access to those files and to these documents.  Dkt. No. 144 ¶ 8.  Three of the four documents—PX-101, PX-106, and PX-108—were attached to an affidavit filed by Plaintiff in this litigation on June 21, 2021.  Dkt. Nos. 144-4; 144-7; 144-8.  All of the emails were produced to Defendants on December 3, 2021, as part of Plaintiff's supplemental production through an email that stated that the production contained "some pre-acquisition emails between your clients and their attorney Gary Silver."  Dkt. No. 350-2.  Defendants seek to preclude Plaintiff from offering the documents on grounds of attorney-client privilege.

There is no substantial dispute that New York law governs this dispute.  The MIPA contains a New York choice-of-law provision and the litigation is sited in New York asserting claims under New York law based on diversity jurisdiction.  If the privilege was waived, such waiver arises out of conduct occurring in New York.  Under the Federal Rules of Evidence, where state law supplies the rule of decision, state law determines the existence and scope of the attorney-client privilege.  Fed. R. Evid. 501; *see also Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 103 (S.D.N.Y. 2008); *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, 215 F.R.D. 466, 470 (S.D.N.Y. 2003); *Askari v. McDermott, Will & Emery, LLP*, 114 N.Y.S.3d 412, 432 (2d Dep't 2019).

"[T]he burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987) (quoting *In re Grand Jury Subpoena Dtd. January 4, 1984*, 750 F.2d 223, 224 (2d Cir. 1984)). "The attorney-client privilege shields from disclosure any confidential communications between an attorney and his or her client made for the purpose of obtaining or facilitating legal advice in the course of a professional relationship." *Ambac Assur. Corp. v. Countrywide Home Loans, Inc.*, 57 N.E.3d 30, 34 (N.Y. 2016). "The party asserting the privilege bears the burden of establishing its entitlement to protection by showing that the communication at issue was between an attorney and a client 'for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship,' that the communication was predominantly of a legal character, that the communication was confidential and that the privilege was not waived." *Id.* at 34–35 (quoting *Rossi v. Blue Cross & Blue Shield of Greater N.Y.*, 540 N.E.2d 703, 706 (N.Y. 1989)).

In order to enjoy the protection of the privilege, a communication must be made and kept in confidence. *Id.* at 34–35. "It is well-established that voluntary disclosure of confidential material to a third party waives any applicable attorney-client privilege." *Schanfield v. Sojitz Corp. of America*, 258 F.R.D. 211, 214 (S.D.N.Y. 2009); *Music Sales Corp. v. Morris*, 1999 WL 974025, at *7 (S.D.N.Y. Oct. 26, 1999). "Public, even extrajudicial disclosures, constitute a waiver of the privilege 'for the communications or portions of communications disclosed.'" *United States v. Jacobs*, 117 F.3d 82, 91 (2d Cir. 1997) (quoting *In re Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 469 (S.D.N.Y. 1996)) (emphasis omitted), *abrogated on other grounds by Loughrin v. United States*, 573 U.S. 351 (2014); *see id.* at 90 ("The *von Bulow* court . . . did recognize that the attorney-client privilege had been waived with respect to any 'matters *actually*

*disclosed* in the book,' even though the disclosures were extrajudicial." (quoting *In re von Bulow*, 828 F.2d 94, 102 (2d Cir. 1987)).

Defendants rely on New York caselaw that draws a distinction between confidential communications regarding a company's ongoing operations and those related to its acquisition, and holds that—at least in the context of a sale of all or substantially all assets—the transfer of electronic data containing otherwise privileged communications conveys control of the attorney-client privilege with respect to communications regarding ongoing operations but not with respect to communications regarding the acquisition.  *See Tekni-Plex, Inc. v. Meyner & Landis*, 674 N.E.2d 663, 669–72 (N.Y. 1996); *Orbit One Communications, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 105 (S.D.N.Y. 2008).  The New York Court of Appeals reasoned in *Tekni-Plex* that control of the privilege with respect to communications regarding ongoing operations (including the ability to assert or waive the privilege) passed to the successor corporation because it succeeded those operations but that the right to the communications regarding the merger did not pass because the successor corporation acquired no rights based on those communications.  674 N.E.2d at 670–72.  The court noted that the parties to the acquisition had agreed "that in any subsequent dispute arising out of the transaction the interests of the buyer will be pitted against the interests of the sold corporation."  *Id*. at 671–72.

The Court need not consider whether *Tekni-Plex* applies, outside the sale of assets context in which there is contract language bearing on the issue of control.  *See* G. Giesel, *Control of the Attorney-Client Privilege After Mergers and Other Transformational Transactions: Should Control of the Privilege Be Alienable By Contract?*, 48 Seton Hall. L. Rev. 309, 335 (2018) (noting the ambiguity of *Tekni-Plex* about the import of express contract

4

language on the issue of privilege).[1]  Even if it does, Defendants have waived the privilege here

by not taking any action until the very eve of trial to assert it.  "A party seeking the protections of

the attorney-client privilege must affirmatively act to protect her communications."  *Niceforo v.*

*UBS Glob. Asset Mgmt. Americas, Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014) (citing *Hollis*

*v. O'Driscoll*, 2013 WL 2896860, at *2 (S.D.N.Y. June 11, 2013)); *see also In re Horowitz*, 482

F.2d 72, 82 (2d Cir. 1973) ("It is not asking too much to insist that if a client wishes to preserve

the privilege . . . , he must take some affirmative action to preserve confidentiality.").  A party

must take reasonable steps to protect the privilege.  *See Bank Brussels Lambert v. Credit*

*Lyonnais (Suisse) S.A.*, 160 F.R.D. 437, 443 (S.D.N.Y. 1995) ("[T]he privilege is waived with

respect to mistakenly produced documents only if the producing party failed to take reasonable

steps to maintain their confidentiality."); *see also Curto v. Med. World Commc'ns, Inc.*, 783 F.

Supp. 2d 373, 379 n.7 (E.D.N.Y. 2011) (describing this approach as "generally applied by courts

within th[e] [Second] Circuit"); *see also HSH Nordbank AG New York Branch v. Swerdlow*, 259

F.R.D. 64, 74 (S.D.N.Y. 2009).

　　　In this case, Defendants took no timely or reasonable steps to preserve the privilege.

Defendants chose to convey their communications over FSLLC's electronic facilities.  Each of

the Defendants may have been a co-owner of FSLLC at the time the communications were made.

However, when Defendants sold their interests in FSLLC, Defendants ceased to have any

interest in FSLLC and control of that corporation passed to Rekor.  At that point, FSLLC and its

owner Rekor (and not the individual who sent the communication) had the rights to the data on

FSLLC's email server and contained it its files.  Section 1.2.2.5 of Rekor's policies and

---

[1] Delaware law follows a different approach.  *See generally Great Hill Equity Partners IV, LP v.*
*SIG Growth Equity Fund I, LLLP*, 80 A.3d 155 (Del. Ch. 2013).

procedures—which Defendant Loughlin worked on, amended, and circulated in her role as Rekor's General Counsel—made clear to Defendants there was no expectation of confidentiality for those documents.  It states that "[a]nything you do using the Company's corporate electronic facilities (e.g., our computers, mobile devices, network, etc.) or store on our premises (e.g., letters, memos, and other documents) might be disclosed to people inside and outside the company."  Dkt. No. 350-1 at 12.  All of the emails at issue were correspondence with Defendants on their corporate email accounts that became subject to this provision.  Defendants did not then take any action to protect the confidentiality of their communications.

Moreover, when Defendants resigned from Rekor and FSLLC in December 2018 following what they describe as a period when "tensions were very high" and a "contentious meeting," they still took no action to request return of the communications.  Dkt. No. 342 at 2.  When Plaintiff published the communications on the public docket in June 2021, making them available to the world, Defendants did not take action either to ask that the filing be sealed or that the documents be returned.  *Cf. Curto*, 783 F. Supp. 2d at 380 (citing cases in which a party waived attorney-client privilege by filing the document on the docket).  Even in December 2021, when the documents were produced by Plaintiff to Defendants (making clear that Plaintiff was still in possession of the documents), Defendants took no action to demand their return or to request that they be segregated and kept confidential.  *See*, *e.g.*, *Clarke v. J.P. Morgan Chase & Co.*, 2009 WL 970940, at *6 (S.D.N.Y. Apr. 10, 2009) (finding privilege waived because "from the . . . date when Defendant learned (or, if they had but looked at Plaintiffs' document production, should have learned) of the e-mail's disclosure, Defendant took an inexplicably long time to demand its destruction or return").  Indeed, it was not until the final pretrial conference—the second business day before trial—that Defendants took any action and even then, it was not

to ask that the documents be sealed but only to request that documents that were already in the possession of the world not be usable uniquely by Plaintiff in this action.[2] *LaSalle Bank Nat. Ass'n v. Merrill Lynch Mortg. Lending, Inc.*, 2007 WL 2324292, at *5 (S.D.N.Y. Aug. 13, 2007) ("This is not a case in which defense counsel acted in a prompt fashion—i.e., within a day or two—as to warrant a finding of no waiver.").

Defendants argue that, at the time FSLLC was purchased by Plaintiff, Defendants did not anticipate that Plaintiff would file a lawsuit against them and that when the documents were publicly filed, they "were not alerted that the documents would be used for any substantive point." Dkt. No. 351 at 2. But that is not the point. The privilege protects against public disclosure of confidences and only secondarily against the use of privileged documents in litigation. If the confidences are no longer confidential, the erstwhile privilege holder enjoys no protection against the use of them in litigation. Defendants took no action to protect the communications until yesterday and, even then, did not take action to protect the confidentiality of their communications. They thus have waived whatever privilege might otherwise have attached to the documents. *See*, *e.g.*, *In re Philip Servs. Corp. Sec. Litig.*, 2005 WL 2482494, at *2 (S.D.N.Y. Oct. 7, 2005) (noting the failure to "take timely or adequate steps to seek the return" because there was no application to protect its privilege, and the party had not asserted privilege on its behalf, or otherwise raised an objection). If the documents are available to any

---

[2] Defendants also argue, in their letter, that they had asserted privilege when they raised privilege objections during the March 2022 Deposition of Satterfield. But the document had been used in Rhulen's deposition with no objection two months earlier. That is sufficient to find waiver. *See Luna Gaming-San Diego, LLC v. Dorsey & Whitney, LLP*, 2010 WL 275083, at *5 (S.D. Cal. Jan. 13, 2010) (citing cases to support the proposition that "under both state and federal law, if a privileged document is used at a deposition, and the privilege holder fails to object immediately, the privilege is waived.").

member of the public to view and to use by virtue of their publication nearly two years ago, there

is no basis to deprive Plaintiff alone of the right to use the documents in this litigation.


SO ORDERED.


Dated: February 10, 2023
New York, New York                            _____
                                                     LEWIS J. LIMAN
                                               United States District Judge